### (April 30, 1941.)

Catherine F. Laughlin, as Administratrix, etc., of Hugh E. Laughlin, Deceased, Respondent, v. The New York Power & Light Corporation, Appellant.

Judgment and order appealed from affirmed, with costs.

Crapser, Heffernan and Foster, JJ., concur; Schenck, J., dissents, in an opinion, in which Hill, P. J., concurs.

Schenck, J. (dissenting). On May 23, 1938, Hugh E. Laughlin, plaintiff's intestate, was engaged in the employment of the water works department in the city of Troy, N. Y. In the early morning of that day, he was one of the crew searching for a leak in a water main. It was found necessary for one of the crew to enter a manhole leading to a vault through which the water main in question ran at or near the corner of One Hundred and Twenty-first street and Third avenue. This was necessary because inspection near the site of the leak indicated that the valves in the main at the point in question had to be turned to control the flow of water and thus enable repairs to be made to the leak. Accordingly, plaintiff's intestate entered the vault through the manhole at the point above indicated. He did not reappear, however, after a short while and another member of the crew went into the vault. He was seen to collapse. The fire alarm was sounded. A battalion chief and a fireman succeeded in rescuing the second member of the crew alive, but plaintiff's intestate was dead when removed. It is not disputed that the cause of death was carbon monoxide poisoning.

A large water main, the valves to which were the object of the deceased's attention when he was overcome, was the only main or pipeline running through

the vault or manhole. The walls of the vault were of brick of considerable thickness, although testimony differs as to their state of repair and solidity. About two feet from the vault wall, at the nearest point, runs a gas main of the defendant corporation. This gas main has no contact with the vault, manhole entrance or water main, the two intervening feet at the closest point being comprised merely of earth. There were also other gas mains of defendant in the vicinity of the vault but at much greater distance from the walls of the vault than the main two feet distant.

No direct evidence was adduced as to a leak or any other defect in any of the nearby gas mains. Plaintiff's principal contentions seem to be based on the points: (1) that defendant's negligence is established under *Ward* v. *Iroquois Gas Corporation* (233 App. Div. 127; affd., 258 N. Y. 124) and (2) that a *prima facie* case has been presented which defendant has failed to meet. The jury found for the plaintiff in the sum of $15,000. I am of the opinion that the plaintiff's position as maintained in the two foregoing contentions and as presented to the jury was insufficient to support the verdict, which should be reversed.

The only factor which in any way linked the defendant to the death of the plaintiff was the testimony of an expert, one Whitwell. As far as the rest of plaintiff's case is concerned the record reveals nothing more than that the plaintiff's intestate died of carbon monoxide poisoning, and that about two feet from a brick walled vault in which the poison gas was found, there runs a gas main owned and maintained by defendant. An attempt to make a causal connection between these two facts is the substance of Whitwell's expert testimony.

It is true that Whitwell's testimony was entitled to what credence the jury saw fit to give it. The jury could have accepted his opinions and rejected those of expert witnesses who testified for the defense. However, even giving the admissible part of Whitwell's testimony full weight, it amounts to nothing more than his opinion that the carbon monoxide " must have " escaped from the gas main, seeped through two feet of earth and a brick wall, and stored itself in the vault in which plaintiff's intestate met his death. This evidence is speculative. Even if the jury disregarded affirmative expert testimony of two defense witnesses to the effect that the carbon monoxide might well have been formed by other factors such as tar and the rusting process of metal in the vault, the testimony of Whitwell was insufficient to impute negligence to the defendant.

In addition thereto, there is in the record an error in the admission of certain testimony by Whitwell which I think is, of itself, reversible. He was asked: " In a street, Mr. Whitwell, in which there are gas mains, sewer mains, water mains, can you tell this Court and jury what would be the sources of carbon monoxide? " He answered: " The only source would be illuminating gas." The question was improper, because it was hypothetical and did not state facts which conformed with the proof in the record. The circumstances actually involved a vault with a water main contained therein and a gas main separated from the vault by a brick wall and two feet of earth. The question asked referred only to a street " in which there are gas mains, sewer mains, water mains." No foundation in proof was ever laid for such a question. The objection to it should have been sustained. The answer, furthermore, being so unequivocal, must have had great influence upon the jury. In view of the fact that plaintiff's whole case is built around Whitwell's testimony, the question and answer were sufficiently prejudicial to warrant a reversal.

*Ward* v. *Iroquois Gas Corporation* (*supra*) is not controlling here. In that case injury was sustained by plaintiff as a result of a manhole cover blowing into the air from over a vault through which defendant's gas main ran. There was no question but that the gas was in the vault in some form in the *Ward* case. In the case at hand the gas main was two feet away from the site of the formation of the carbon monoxide. The causal connection, as already indicated, has not been shown. In the *Ward* case, the explosion occurred at a point at which defendant's gas main was located. Here, death occurred at a place at which defendant's main was not present. The situations are clearly distinguishable.

There was, in addition, no evidence of negligence on the part of the defendant in the maintenance of the gas main. No leaks were shown and there was no evidence, except testimony by Whitwell, as to the practices of other gas companies, that proper care was not exercised by defendant in the maintenance of its gas mains. There was nothing except conjecture upon which to predicate negligence in this defendant at the time and place in question. The burden of proof was on the plaintiff to establish the negligence of the defendant. There was no *prima facie* case making it incumbent on the defendant to disprove negligence. The burden of proof was not sustained upon the record by the plaintiff, and the verdict was contrary to the weight of evidence.

Judgment and order denying motion to set aside verdict should be reversed and the complaint dismissed.

Hill, P. J., concurs with Schenck, J.