Wilfred A. Waltemade, J.
The defendant has made a motion pursuant to the provisions of OPLR 4401, for a dismissal of the complaint upon the ground that the plaintiff has failed to establish a prima facie case, and for a directed verdict in favor of the defendant, and has renewed all motions at the conclusion of the entire case.
In the determination of the motions made at end of plaintiff’s case, the court has, as required by law, considered the evidence in the light most favorable to the plaintiff (Laughlin v. New York Power & Light Corp., 23 N. Y. S. 2d 292, affd. 261 App. Div. 1107, affd. 287 N. Y. 681; Berger v. City of New York, 173 Misc. 1070, affd. 260 App. Div. 402, affd. 285 N. Y. 723).
Subsequent to the argument of the motions at the end of plaintiff’s case, the plaintiff withdrew those allegations in his *701 complaint referring to the television broadcast of the play entitled “If I Should Die”, transmitted on January 2, 1963 over the facilities of Station WBBM— TV in the City of Chicago, State of Illinois. The court, therefore, has not considered the allegations in the complaint addressed to that broadcast, and such allegations, that is, paragraph Third and that portion of paragraph Fifth after the word “ state”, are now deemed stricken from the complaint.
Counsel for the defendant has urged four grounds in support of defendant’s motions. The court will dispose of them in their inverse order.
1. The defendant urged a dismissal of the complaint upon the ground that the plaintiff failed to establish either compensatory or exemplary damages. The case of Metzger v. Dell Pub. Co. (207 Misc. 182) is applicable to the case now on trial. In that case, the plaintiff sued the defendant publisher, alleging a violation of his right of privacy in that his photograph was published in defendant’s magazine. On a motion to set aside the jury’s verdict in favor of the plaintiff, the court found that there was no evidence that the plaintiff was in fact actually damaged. The court granted the motion to set aside the verdict unless the plaintiff stipulated to a reduced verdict, in which event the motion would be denied. The court in arriving at its determination stated that damages are to be presumed or inferred from the mere violation of the right of privacy.
On the question of punitive damages, the court finds that there is sufficient evidence in the record of this case upon which the jury could make an award for such damages.
In the case on trial, the plaintiff testified that he heard of the television broadcast a short time after it was exhibited over defendant’s television station. This fact alone creates a presumption or inference of some damage. The issue of the quantum of the damages is not before the court on this motion. It is for the jury to determine that question, based upon the evidence in this case.
2. Defendant contends that the First Amendment of the Constitution of the United States, made applicable to the States through the Fourteenth Amendment of the Constitution, mandates a dismissal of the complaint because the plaintiff has not established any actual malice by the defendant in telecasting the play “If I should Die” over defendant’s station in New York. This appears to be a question of first impression. In support of this argument, the defendant relies upon the case of New York Times Co. v. Sullivan (376 U. S. 254) decided *702 March 9, 1964, and dictum in the case of Pauling v. New Syndicate Co. (335 F. 2d 659 [C. A. 2d]) decided July 7, 1964.
The Times v. Sullivan case was a landmark decision. In that case the respondent Sullivan, the Commissioner of Public Affairs of the City of Montgomery, Alabama, sued the petitioner, the New York Times Company, alleging that an advertisement in their newspaper libeled the respondent. The respondent recovered a substantial verdict in the Alabama State courts, but the United States Supreme Court, in reversing the judgment and remanding the case to the State court, held (p. 283): 11 We hold today that the Constitution delimits a State’s power to award damages for libel in actions brought by public officials against critics of their official conduct. Since this is such an action, the rule requiring proof of actual malice is applicable.”
In the case of Pauling v. News Syndicate Co. (335 F. 2d 659) the plaintiff, a private citizen, sued the defendant for alleged libelous statements contained in a newspaper published by it. The jury returned a verdict for the defendant. On the appeal by the plaintiff, the court affirmed the jury’s verdict. By way of dictum, the court there, in discussing the effect of the New York Times Co. v. Sullivan case, said (p. 671): “ Although the public official is the strongest case for the constitutional compulsion of such a privilege, it is questionable whether in principle the [New York Times] decision can be so limited.”
The foundation of the argument now made by defendant’s counsel in the case on trial, is that the principle of law enunciated in the New York Times Co. v. Sullivan case (supra) and the dictum observation in the Pauling v. News Syndicate case (supra), both of ivhich cases id ere actions in libel, should now be extended to actions for a violation of one’s privacy.
First it must be noted that the sole and only issue determined by the United States Supreme Court in the Times v. Sullivan case, was that the First Amendment to the Constitution of the United States, better known as the “ freedom of the press ” and ‘ ‘ freedom of speech ’ ’ amendment as implemented by the Fourteenth Amendment requires that a State recognize ‘ ‘ a privilege of criticism of official conduct ’ ’. Absent actual malice, a public official criticized for his official conduct can no longer sue for libel in any court. This is the only effect and impact of the New York Times case.
A public official is responsible to all of the people of the political subdivision he serves. The best interests of the people in the proper functioning of their government compel a constant review of the acts of such public officials. Their official conduct must be subject to fair comment without casting upon those *703 who originate such comments, the fear of a libel suit thus inhibiting public exposure. The strength of our democratic form of government is found in the principle that communications media may freely inform the citizenry of the actions of public officials. Excesses of power and the misconduct of public officers can only be remedied by a public aroused through information imparted to them by unfettered sources of news freely permitted to comment.
In the case at bar, we deal, not with a public official, but with a private citizen whose individual actions should not be the subject of public retaliation. The right of a private citizen to live in self-imposed seclusion free from the prying eye of television is of equal importance to that of the right of television to report and fairly comment on the actions of public officials.
It should be noted that the plaintiff in the case on trial is not a public official although in some respects he may be considered to be a public figure. Nonetheless, a public figure enjoys a right of privacy, the invasion of which does give rise to an action under the provisions of sections 50 and 51 of the New York Civil Rights Law (see Spahn v. Massner, 23 A D 2d 216 — nationally known sports figure).
This court cannot believe that it was the intention of the United States Supreme Court to subject private citizens and public figures to a broadside invasion of their rights of privacy. Any requirement that such an aggrieved person must establish malice as the basis for a successful prosecution of a right of action, would be an open invitation to scandalmongers, idle gossipers and keyhole peepers to spew their reckless and sordid stories with impunity. This court cannot adopt the dictum of the Pauling case as the law of this jurisdiction.
The New York courts have considered the application of the New York Times Co. v. Sullivan case to actions for a breach of privacy. In the case of Spahn v. Messner (supra) and in Dempsey v. Time, Inc. (43 Misc 2d 754, affd. 22 A D 2d 854) it was held that sections 50 and 51 of the Civil Bights Law (right of privacy law) did not violate the First Amendment of the Constitution of the United States. In the Spahn ease, the invasion of privacy occurred through the publication of a biography, and in the Dempsey case, a magazine article was the subject of the violation of privacy. In the case on trial a television broadcast is involved.
The medium of expression employed in an alleged breach of privacy should not and does not affect the principle of law to be applied. The Court of Appeals of this State, in the case of Gautier v. Pro-Football (304 N. Y. 354) held that television *704 enjoys the same privileges accorded to other media where the statutory rig’ht of privacy is in issue. The court notes that the privilege enjoyed by television is the same, not greater nor less, than that enjoyed by other media of communication.
The court therefore determines that the First Amendment of the United States Constitution, as implemented by the Fourteenth Amendment, does not confer immunity on the defendant in this case.
3. The defendant argues that the public policy of this State precludes plaintiff from obtaining any recovery in this action because he is a confessed participant in the assassination of Rasputin.
It has long been the policy of this State that no one shall be permitted to take advantage of his own wrongdoing or to base any claim upon his own iniquity (Riggs v. Palmer, 115 N. Y. 506; Carr v. Hoy, 2 N Y 2d 185). The policy of this State is clear. The problem comes in the application of that policy to the facts of this particular case.
If the plaintiff had claimed a property right in the assassination of Rasputin, and if his lawsuit were founded solely upon that basis, the court would not hesitate to dismiss his complaint. The action here, however, is not founded on the fact that the plaintiff was a co-conspirator in the assassination of Rasputin, but that the defendant breached the plaintiff’s right of privacy in that the televised broadcast contained fictionalized dialogue and actions in recreating the plaintiff’s participation in the historical event of Rasputin’s assassination.
In the case on trial, it is the wrongful act of the defendant, not the wrongful act of the plaintiff, which gives rise to this action.
In Riggs v. Palmer (supra) a beneficiary under a will who murdered the testator was deprived of any interest in the estate left to him by the victim. In Carr v. Hoy (supra) the plaintiff was denied recovery of money which he had obtained illegally. In Hofferman v. Simmons (290 N. Y. 449) the plaintiffs were barred from recovering the money which had been paid to them as wagers or bets.
The court determines that public policy does not preclude the plaintiff from a recovery of a judgment under the circumstances of this case.
4. The defendant urges on this motion that the plaintiff failed to establish his prima facie case in that plaintiff did not prove his contentions.
The plaintiff maintains that the television production “If I Should Die ’ ’ did not accurately depict the Prince’s motivation *705 and Ms inter-relationsMp with Princess Irina in the events leading to Rasputin’s death and that it was a. fictionalization of the true events. He further contends that the dialogue originated by the authors of the telecast, was inaccurate and fictionalized to dramatize and to 1 ‘ sexualize ’ ’ the play.
The testimony of the plaintiff regarding the events which he says actually took place, and the conversations engaged in by the participants at the time of Rasputin’s assassination, together with plaintiff’s recital, and of the inaccuracies in the dialogue used in the television film of the play “If I Should Die ”, remained unshaken even under the thorough and extended cross-examination to which he was subjected.
The sound film tape of the televised presentation over New York Station WCBS — TV was shown to the court and jury and was admitted in evidence as plaintiff’s ExMbit 2. To properly determine whether the play was a fictionalization of the true events, one must view the facial expressions and gestures of the actors and actresses as they spoke their parts. Further, the continuity of each scene as it followed another gives true meaning to the dialogue. Both the audio and video portions of the telecast are to be given equal consideration.
An examination of the testimony presented by the plaintiff, coupled with the viewing of the filmed telecast, compels the court to hold that at the end of plaintiff’s case, there was sufficient evidence presented to make out a prima facie case. Likewise, after hearing the entire case, the court determines that there is sufficient evidence for a submission of the case to the jury for its determination of the issues of fact.
It has been conceded that the telecast of the play over New York Station WCBS — TV on January 5, 1963 was made in the regular course of defendant’s business and/or trade, and that no written consent therefor had been obtained from the plaintiff.
Accordingly, defendant’s motions made at the close of the plaintiff’s case and at the end of the entire case to dismiss the complaint and for a directed verdict, are each denied.