James H. Boomer, J.
Extensive pretrial examinations having been held, the defendants move for summary judgment. The plaintiff sues for money damages for the unauthorized use of her photograph on the front cover of a magazine published and distributed by one of the defendants, a student organization of the defendant university.
The first cause of action is based upon section 51 of the Civil Rights Law which gives a person a cause of action for damages for the unauthorized use of his photograph "for the purpose of advertising or trade.” The plaintiff’s photograph did not appear in connection with any commercial advertising and there is no showing that the defendant is engaged in commercial trade or operates for profit. Its purposes are the dissemination of its beliefs.
” [W]hen a living persons’s name, portrait or picture is used, it is not necessarily and at all times used either for advertís *1055 ing purposes, or for the purposes of trade.” (Binns v Vitagraph Co., 210 NY 51, 55.) Where, without consent, a photograph is used "as a matter of business and profit” it is contrary to the prohibition of the statute (Binns v Vitagraph Co., supra, p 58). "’A picture illustrating an article on a matter of public interest is not considered used for the purpose of trade or advertising within the prohibition of the statute * * * unless it has no real relationship to the article * * * or unless the article is an advertisement in disguise.’ (Dallesandro v Holt & Co., 4 AD2d 470, 471; app dsmd 7 NY2d 735; see, also, Pagan v New York Herald Tribune, 32 AD2d 341, affd 26 NY2d 941; Oma v Hillman Periodicals, 281 App Div 240; Thompson v Close-Up, 277 App Div 848.).” (Murray v New York Mag. Co., 27 NY2d 406, 409.)
Where a photograph is not used in connection with an advertisement and does not illustrate an article on a matter of public interest, but appears in a periodical primarily to enhance the sales of the periodical, the use may be considered a commercial one for the purpose of trade. Thus, it cannot be doubted that the subject of a centerfold has a cause of action against a magazine for the unauthorized use of his photograph (see Meyers v U. S. Camera Pub. Corp., 9 Misc 2d 765). "There may, however, be liability * * * if the photograph used has so tenuous a connection with the news item or educational article that it can be said to have no legitimate relation to it and be used for the purpose of promoting the sale of the publication. ” (Lahiri v Daily Mirror, 162 Misc 776, 782, emphasis supplied, referred to in Flores v Mosler Safe Co., 7 NY2d 276, 282-283.)
Here, however, the magazine was not sold, but was distributed free of charge. The defendant organization was not a commercial venture and was not engaged in trade. I hold that since the photograph was not used in connection with any advertising material and was not used for the purpose of trade, its use does not come within the prohibition of section 51 of the Civil Rights Law. Accordingly, I grant partial summary judgment dismissing the first cause of action.
The second cause of action, for an injunction, is also based upon section 51 of the Civil Rights Law and should also be dismissed.
The third cause of action is founded in libel. The defendants claim that they are entitled to summary judgment in their favor on this cause of action since there is no proof of actual *1056 malice on the part of the defendants and no proof of actual damage sustained by the plaintiff.
While public officials (New York Times Co. v Sullivan, 376 US 254) and public figures (Curtis Publishing Co. v Butts, 388 US 130) must allege and prove actual malice to sustain a cause of action for libel, private individuals need not (Gertz v Robert Welch, Inc., 418 US 323). In the absence of a showing of actual malice, however, private individuals are limited to compensation for "actual injury” (Gertz v Robert Welch, Inc., supra, p 349; Lawlor v Gallagher Presidents’ Report, 394 F Supp 721).
What is "actual injury”? The Supreme Court has partially answered the question by stating: "We need not define 'actual injury,’ as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.” (Gertz v Robert Welch, Inc., supra, pp 349-350.)
It is the defendants’ contention that no actual malice has been shown and that there has been no "actual injury” to the plaintiff. Therefore, she has no cause of action. Assuming there is no showing of actual malice, is there an issue of fact concerning "actual injury”. It is undisputed that the plaintiff has incurred no out-of-pocket loss, except attorney’s fees for the commencement of this action. These attorney’s fees do not constitute an item of damage in a libel action. Has the plaintiff suffered "impairment of reputation and standing in the community, personal humiliation, (or) mental anguish and suffering.” It may be inferred from the testimony of the plaintiff at the examination before trial that she suffered no personal humiliation, mental anguish or suffering. There is an absence of testimony in the record of the examination before trial concerning impairment of the plaintiff’s reputation and standing in the community. Plaintiff, however, was under no obligation to submit all of her proof at the examination before trial. And she is under no obligation on this motion for summary judgment to present proof of loss of reputation since *1057 the defendant did not first submit evidentiary facts showing that there was no loss of reputation. Furthermore, this is an issue that cannot properly be decided on papers and should be reserved for the trial. I decline, therefore, to grant summary judgment dismissing the cause of action for libel.
The defendant university moves for summary judgment in its favor claiming that it is not responsible for the acts of the student organization. This presents a difficult question seldom passed upon (see, Tort Liability of a University for Libelous Material in Student Publications, 71 Mich L Rev 1061). The attorney for the defendant university argues that the university is not liable for the acts of those over whom it has no control, and the university has no control over the defendant student organization. Indeed, he argues, that because of the constitutional protection afforded free speech and expression, the university is powerless to control the publications of its student organizations. Defendants’ attorney writes:
"Federal Court decisions have consistently over the past several years limited the control that could be exercised by a University over a student’s organization and newspapers.
"In Gay Students Organization vs Bonner, 367 F Supp 1088, it was held that a college administrator may not deny official recognition to a student organization or control its activities. In Joyner vs Whiting, 477 F2d 456, it was held that withdrawal of funds from a student newspaper violates the First Amendment. In Papish vs The Board of Curators of the University of Missouri, 410 US 667, it was held that the mere dissemination of ideas no matter how offensive to good taste on a University Campus may not be shut off in the name of 'conventions of decency.’ Also see Healey vs James, 408 US 169.
"In Keyishiau vs Board of Regents of the University of the State of New York, 385 US 589, it was held that the constitutional liberty of free press applies to the student press. In Tinker vs DesMoines Independent Community School District, 393 US 503, it was held that the First Amendment prohibited a High School from disciplining students for wearing black arm bands as a protest against the Viet Nam war. The thrust of these decisions is that a University may not restrict freedom of expression and the presentation of philosophies or ideas.”
All of the. cases cited by the attorney for the defendant university, however, involve State or public institutions. The *1058 constitutional safeguard of freedom of expression as extended by the Fourteenth Amendment proscribes "State” action. (See, Tort Liability of a University for Libelous Material in Student Publications, 71 Mich L Rev 1061, 1076.) The defendant university is not a State university and there was no evidence submitted of State control.
From the testimony given at the examination before trial it appears that the university does not directly exercise control over its student organizations. Student organizations receive approval from the student senate. Once they receive approval they are eligible to receive funds collected by the university and are entitled to use university space and property. They are also entitled to use the name of the university as a prefix to the title of their organization. The university, by furnishing and providing to the organization money, space and in lending its name, may well be responsible for the acts of the organization, at least insofar as the university has the power to exercise control. By assisting the organization in its activities, it cannot avoid responsibility by refusing to exercise control or by delegating that control to another student organization.
A private university may be in a position to take precautions against the publication of libelous matter in its student publications. It may have the right of prior restraint. At least it may issue instructions and guidelines to those in charge of student publications so those persons are made aware of the dangers of libel and ways to safeguard against it.
I hold that the defendant University of Rochester is not entitled to summary judgment on the ground that it is not responsible for the acts of the student organization. The question of the university’s responsibility should not be determined until all of the facts are presented at the trial.
While not raised by the defendant student organization, I point out that the student organization may not itself be held responsible for a libelous publication unless its members have authorized or ratified the libel (Martin v Curran, 303 NY 276).
Defendant Weiss moves to dismiss the cross claim of the other defendants against her. The cross claim alleges that plaintiff’s picture was forwarded to the defendant organization by the defendant Weiss for publication and asks that the ultimate rights as between the defendants be ascertained at the trial. This cross claim pleads no facts entitling the defendants to full indemnity from the defendant Weiss. However, insofar as it asks for an apportionment of liability on the *1059 theory enunciated in Dole v Dow Chem. Co. (30 NY2d 143), I hold it states a cause of action. A Dole cross claim in an answer is sufficient where the complaint alleges facts which, if proven, will hold both defendants "involved together in causing damage[s]” to the plaintiff. (Dole v Dow Chem. Co., supra, p 153.) Weinstein, Korn and Miller indicate that the standard for pleading a cross claim may be less stringent where the subject of the cross claim is related to the plaintiffs original claim (3 Weinstein-Korn-Miller, NY Civ Prac, par 3019.21). Where the cross claim asks merely for a Dole apportionment, I see no need for unnecessary paper work by requiring that the matters alleged in the complaint be realleged in the answer and cross claim.