Jackie Collins LERMAN, Plaintiff,

v.

CHUCKLEBERRY PUBLISHING, INC., and Publishers Distributing Corporation, Defendants.

80 Civ. 1658 (HFW).

United States District Court, S. D. New York.

July 31, 1980.

On Motion For Reconsideration Sept. 2, 1980.

Katz, Leavy, Rosensweig & Sindle, New York City, for defendant Publishers.

Greenbaum, Wolff & Ernst, New York City, for Publishers on motion for reconsideration; Marcia B. Paul and Jerry Simon Chasen, New York City, of counsel.

## OPINION

WERKER, District Judge.

This action for libel, invasion of privacy and violation of the right of publicity was commenced by plaintiff Jackie Collins Lerman against defendants Chuckleberry Publishing Inc. ("Chuckleberry") and Publishers Distributing Corporation ("Publishers").[1] This case is presently before the court on plaintiff's motion for partial summary judgment on her claim of invasion of privacy under sections 50 and 51 of the New York Civil Rights Law (McKinney 1976 & Supp. 1979–1980). Plaintiff also moves for an expedited trial on the issue of damages. Chuckleberry cross-moves to compel discovery.

## FACTS

Chuckleberry and Publishers are, respectively, the publisher and national distributor of a magazine entitled *Adelina.* The cover of the May 1980 issue of *Adelina* bears the headline "In The Nude From The Playmen Archives," and lists, among others, the plaintiff's name. At pages 117–20 of the issue, there is a section headed "Archives" which contains erotic and nude photographs of purportedly well-known actresses. At page 119, plaintiff's name appears in bold lettering accompanying photographs of a naked woman and an orgy scene with two men and three women. Underneath the "Jackie Collins" caption is the statement that "Jackie is a newcomer to films and her first was the *The World Is Full Of Married Men,* from the novel by the

Grutman & Schafrann and Felix C. Ziffer, New York City, for plaintiff; Jeffrey H. Daichman, New York City, of counsel.

Feltman, Karesh & Major and Goldschmidt, Fredericks, Kurzman & Oshatz, New York City, for defendant Chuckleberry.

---

1. Plaintiff is a citizen of the United Kingdom residing in London, England. Chuckleberry and Publishers are New York corporations. Jurisdiction is premised on diversity of citizenship with an amount in controversy exceeding $10,000. 28 U.S.C. § 1332. Although defendants claim that a question of fact exists as to plaintiff's citizenship, they have not adduced any evidence that would dispute plaintiff's claim that she is a British citizen.

late Jacqueline Susann. There is an orgy scene . . . [a]nd after that, what can a starlet do for an encore?" It is clear that plaintiff does not in fact appear in any of the photographs,[2] and it is undisputed that plaintiff is not an actress but rather a successful novelist and screenwriter. She wrote the screenplay for the film *The World Is Full Of Married Men* which was based on a novel written by her and not by the late Jacqueline Susann.

Plaintiff asserts that she never granted defendants consent, written or otherwise, to use her name. The defendants do not deny that they never obtained a written release from plaintiff. Chuckleberry, however, states that the material which is the subject of this lawsuit was previously published in Italy by its Italian licensor, Tattilo Editrice SPA, in the August 1979 issue of *Playmen.* Chuckleberry's Italian licensor purportedly obtained the photographs and text in precisely the form in which they appear in *Adelina* from the Luxembourg office of Media Press International ("MPI"), a public relations firm. The material allegedly was received and distributed by MPI in connection with the promotion of the film *The World Is Full Of Married Men.* Chuckleberry states that it assumed that MPI had releases for the use of this material. According to Chuckleberry, MPI insists that all necessary releases were obtained with respect to the distribution of the pictures in question. However, MPI apparently refuses to furnish Chuckleberry with any such release by plaintiff. Affid. of Walter Zacharius, President of Chuckleberry, sworn to May 12, 1980, at 3–4.

This action was commenced by the filing of a complaint on March 24, 1980. An order to show cause was issued the same day, and following a hearing on March 31, 1980, a preliminary injunction was granted by this court. Thereafter, plaintiff filed and served an amended complaint. The instant motions followed.

## DISCUSSION

In moving for summary judgment on her invasion of privacy claim, plaintiff argues that the defendants used her name in the May 1980 issue of *Adelina* for purposes of trade without her consent. In opposing the motion, the defendants rely principally on two arguments: (1) because the plaintiff is a public figure and because her name was used in connection with a "newsworthy" event, they cannot be liable for publishing her name unless the plaintiff establishes malice, *citing inter alia Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), and (2) the plaintiff purportedly delivered a release in connection with similar or identical material published in an Italian magazine. In connection with the latter argument, defendants contend that plaintiff has refused to cooperate with discovery requests, and that they therefore have not been able to ascertain certain facts, including whether or not a prior release had been granted to MPI.

Section 51 of the Civil Rights Law provides in pertinent part:

> Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained [of such person] may maintain an equitable action . . . against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use . . . . .

N.Y. Civil Rights Law § 51 (McKinney Supp. 1979–1980).

■ To make out a claim under section 51, a plaintiff must establish (1) that the defendant used plaintiff's name, portrait or

---

**2.** Although defendants in their Rule 9(g) statement claim that a question of fact exists as to whether or not the magazine in question contains photographs of plaintiff, since they have not adduced any material to seriously dispute plaintiff's sworn statement that she is not in

any of the photographs in the magazine, defendants have not demonstrated that such a question of fact does indeed exist. Fed.R. Civ.P. 56(e); *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1979).

picture within the state, (2) for purposes of advertising or trade, and (3) without first obtaining plaintiffs' written consent.

It is clear that the defendants did use plaintiff's name within the state. The May 1980 issue of *Adelina* bore plaintiff's name on the cover and her name was used again on page 119 of that issue. The issue was published and distributed throughout the United States, including New York. Hence, the first element of a section 51 cause of action has been established.

Defendants' use of plaintiff's name on the cover of *Adelina* and associated in the "Archives" section with photographs of a nude woman and an orgy scene purporting to include plaintiff is unquestionably a commercial use for the purpose of trade within the meaning of the statute. In *Wallace v. Weiss*, 82 Misc.2d 1053, 372 N.Y.S.2d 416 (Sup.Ct.Mon.Co.1975), the court observed that:

> Where a photograph is not used in connection with an advertisement and does not illustrate an article on a matter of public interest, but appears in a periodical primarily to enhance the sales of the periodical, the use may be considered a commercial one for the purpose of trade. Thus, it cannot be doubted that the subject of a centerfold has a cause of action against a magazine for the unauthorized use of his photograph.

82 Misc.2d at 1055, 372 N.Y.S.2d at 419 (citation omitted).

■ It is the established law of New York that the unauthorized use of an individual's name or picture is not for "a trade purpose," and thus not violative of section 51, if the name or picture is used in connection with an item of news or some other newsworthy event. *Gautier v. Pro-Football, Inc.*, 304 N.Y. 354, 359, 107 N.E.2d 485, 488 (1952). *Accord, Sidis v. F–R Pub. Corp.*, 113 F.2d 806 (2d Cir.), *cert. denied*, 311 U.S. 711, 61 S.Ct. 393, 85 L.Ed. 462 (1940). In the instant action, however, there is no such informational or newsworthy dimension to Chuckleberry's unauthorized use of plaintiff's name. Rather, the plaintiff's name was used solely for the

purpose of enhancing the sales of the magazine.

In *Ali v. Playgirl, Inc.*, 447 F.Supp. 723 (S.D.N.Y.1978), which involved the unauthorized use of plaintiff Muhammed Ali's likeness in *Playgirl* magazine, the court stated that:

> The picture is a dramatization, an illustration falling somewhere between representational art and cartoon, and is accompanied by a plainly fictional and allegedly libellous bit of doggerel. Defendants cannot be said to have presented 'the unembroidered dissemination of facts' or 'the unvarnished, unfictionalized truth . . . .' The nude portrait was clearly included in the magazine solely "for purposes of trade—*e. g.*, merely to attract attention."

447 F.Supp. at 727 (citations omitted). In the instant case, Chuckleberry's use of plaintiff's name is similarly fictionalized in that plaintiff does not appear in any of the photographs which were represented to be her, and the use of her name was for a commercially exploitive effect rather than for the purpose of informing the public about a newsworthy event. There is no question that plaintiff's name was used for purposes of trade.

■ The third and final element is the absence of consent. It is undisputed that plaintiff did not give the defendants any consent, written or otherwise, to use her name in *Adelina*, and in my opinion it is irrelevant whether or not plaintiff gave a release to MPI. Even if it is assumed that plaintiff did give a release to MPI in Luxembourg for material published in Italy, that release could not be relied on by defendants with respect to their publication of a different magazine in New York. Sections 50 and 51 clearly require a person or company desiring to use a person's name, portrait or picture for trade or advertising purposes to *first* obtain that person's written consent. In the case at bar, the defendants did not *first* obtain the plaintiff's written consent to their usage of her name; the fact that she may have granted a release to some other company is immaterial.

■ Although the issue is not pursued in the defendants' joint memorandum of law, the defendant Publishers maintains that since it merely distributed the issue of *Adelina* in question, it did not "use" plaintiff's name within the meaning of section 51 and therefore is not subject to liability. This position, however, must be rejected. Publishers presumably distributed the magazine for profit; since plaintiff's name appeared on the cover of and in the magazine, Publishers "used" her name. The fact that Publishers may not have known that the plaintiff's name was being used without her consent and in the manner in which it was used is irrelevant to the questions of compensatory damages and injunctive relief. That knowledge is not an element of a cause of action for damages and injunctive relief is clear from the fact that the statute expressly requires knowledge for exemplary damages:

> [I]f the defendant shall have knowingly used such person's name, portrait or picture [for advertising or trade purposes without first obtaining written consent], the jury, in its discretion, may award exemplary damages.

N.Y. Civil Rights Law § 51 (McKinney Supp. 1979–1980). The clear inference is that a plaintiff need not establish knowledge to obtain compensatory and injunctive relief. Accordingly, Publishers is not relieved of liability merely because it purportedly did not know that plaintiff's name was used without consent and in the manner that it was used.

### CONCLUSION

The plaintiff having submitted a sworn affidavit and exhibits demonstrating that she is entitled to relief, and the defendants having failed to show that genuine issues of fact exist as to the claim of statutory invasion of privacy, the motion for partial summary judgment is granted.

Chuckleberry's cross-motion to compel discovery is granted. Plaintiff is directed to appear for the taking of her deposition and to produce or object to the documents requested by Chuckleberry by September 15, 1980.

Plaintiff's request for an expedited trial is at this juncture denied. Counsel for the parties are directed to appear for a pretrial conference on September 26, 1980 at 12 noon in Room 2603 of the U.S. Courthouse.

SO ORDERED.

### ON MOTION FOR RECONSIDERATION

This is a motion for reconsideration of that portion of my opinion and order dated July 31, 1980 which granted summary judgment for the plaintiff Jackie Collins Lerman on her invasion of privacy claim against the defendant Publishers Distributing Corporation ("Publishers"). Publishers contends that a defendant cannot be liable under section 51 of the New York Civil Rights Law unless he has knowledge that a plaintiff's name or likeness is being used without consent for trade purposes. Publishers thus finds fault with the court's holding that it is liable under section 51 even though it may not have known all the circumstances surrounding the publication of plaintiff's name in *Adelina* magazine.

At the outset, the court notes that the authorities relied on by Publishers in support of this motion were not brought to the court's attention in the papers in support of the original motion. Indeed, the argument that Publishers cannot be liable since its role was merely that of a distributor was not pursued at all in the memorandum of law accompanying the original motion papers. Yet, most of the authorities presently relied on by Publishers were available to it at that time, and Publishers certainly had an opportunity then to raise the arguments raised now.[1] Hence, Publishers current efforts to avoid liability are somewhat untimely, and this would be reason enough to deny the motion.

---

1. It should be pointed out that Publishers' attorneys on this motion for reconsideration were not involved on the original motion.

■ In any event, the arguments presently raised must be rejected even when considered on their merits. In contending that a distributor's liability is narrowly limited, Publishers relies primarily on defamation cases and authorities. Since the court's July 31st opinion was concerned only with plaintiff's statutory invasion of privacy claim, these defamation cases and authorities are not on point. Publishers has not cited any case involving the liability of a distributor (who was not also the publisher) under sections 50 and 51 of the New York Civil Rights Law. Moreover, Publishers fails to address the fact that while the language of section 51 expressly requires knowledge for exemplary damages, no such requirement is set forth for compensatory and injunctive relief. In the absence of caselaw holding otherwise, section 51 can only be read to require knowledge for exemplary damages but not for compensatory and injunctive relief.

Publishers argues strenuously that there cannot be liability under sections 50 and 51 absent proof of fault. The court does not disagree with this proposition. However, it is clear that fault has been established. The issue of fault or intent to capitalize on a plaintiff's name is part of the element of use for purposes of advertising or trade. A defendant who uses a plaintiff's name coincidentally has no intent to capitalize on the plaintiff's name, and thus is not using the name for purposes of trade within the meaning of the statute. In the instant case, the defendant Chuckleberry Publishing, Inc. ("Chuckleberry") did indeed use the plaintiff's name for purposes of trade, clearly with the intent to capitalize on her name. To the extent that Publishers was involved as an agent of Chuckleberry in distributing the magazine, Chuckleberry's fault must be imputed to Publishers and Publishers must be responsible for any injury to the plaintiff. If, as between Publishers and Chuckleberry, Publishers is the less culpable party, that fact will be reflected in any award and apportionment of damages.

■ Publishers renews the argument pressed on the original motion that the plaintiff is a public figure and that consequently recovery is barred absent a showing of actual malice. Even assuming the plaintiff is a public figure, this argument must nevertheless be rejected. To recover under the New York invasion of privacy statute, a public figure who is the subject of a false news report or other incorrect informational presentation must indeed prove knowledge of the falsity or a reckless disregard of the truth. *Time, Inc. v. Hill*, 385 U.S. 374, 387–88, 87 S.Ct. 534, 541–42, 17 L.Ed.2d 456 (1967); *Spahn v. Julian Messner, Inc.*, 21 N.Y.2d 124, 127, 233 N.E.2d 840, 842, 286 N.Y.S.2d 832, 834 (1967), *appeal dismissed*, 393 U.S. 1046, 89 S.Ct. 676, 21 L.Ed.2d 600 (1969). However, a person is not stripped of his right of privacy merely because he becomes a public figure, *Reilly v. Rapperswill Corp.*, 50 App.Div.2d 342, 345, 377 N.Y.S.2d 488, 491–92 (1st Dep't 1975); *Youssoupoff v. Columbia Broadcasting System, Inc.*, 48 Misc.2d 700, 703, 265 N.Y.S.2d 754, 758 (1965), and the actual malice requirement does not extend to situations where, as here, the name of a public figure is being used in a completely exploitive, commercial fashion. *See Ali v. Playgirl, Inc.*, 447 F.Supp. 723, 727–28 (S.D.N.Y.1978), and cases cited therein. *Compare Ann–Margaret v. High Society Magazine, Inc.*, 498 F.Supp. 401 (S.D.N.Y.1980) (plaintiff, a well-known actress, chose to appear partially nude in a motion picture; reprint of a photograph of that scene in defendants' "tacky" but not "pornographic" magazine did not give rise to a cause of action under section 51).

The motion for reconsideration is denied.

SO ORDERED.