ANGIO–MEDICAL CORP., Plaintiff,

v.

ELI LILLY & COMPANY, Defendant.

No. 88 Civ. 7400.

United States District Court,
S.D. New York.

Aug. 2, 1989.

Richard Kelly, New York City, for plaintiff.

Jack Kaufman, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

CONBOY, District Judge:

Plaintiff Angio–Medical Corporation ("Angio") brings this cause of action against Eli Lilly & Company ("Lilly") on seven claims. Angio has filed four claims of breach of contract, one claim of breach of duty of good faith and fair dealing, one claim of slander per se, and one claim of trade libel. It seeks damages in excess of $550,0000 for breach of contract and of good faith, $4,000,000 punitive damages for slander per se in addition to $23,625 in attorney's fees and executive time expended for the trade libel claim. The motion presently before the Court is Lilly's motion to dismiss the sixth and seventh claims of Angio's amended complaint arguing that, based on the facts as alleged, Angio cannot state a claim for either slander per se or trade libel. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

Angio is a business incorporated in Delaware with its primary place of business in New York. Lilly is an Indiana corporation which is licensed and conducts business in New York. Angio is engaged in the development of pharmaceutical and cosmetic products using lipid technology to promote new blood vessel development (angiogenesis) and accelerate healing. It has also created a line of cosmetics and is developing products designed to treat numerous physical ailments. Officers of the plaintiff corporation possess various advanced degrees in the sciences and consultants possess M.D. or Ph.D. degrees in medical subjects. Lilly, well known and well respected in the field, manufactures and markets cosmetic, over-the-counter and pharmaceutical products, operating through subsidiaries including Elizabeth Arden Inc.

On May 1, 1985, Angio entered into a "License Agreement" with the trustees of Boston University granting plaintiff the right to manufacture, use, lease or sell processes or formulas for the production of any products relating to cosmetic skincare, hair conditioning, hairgrowth promotion or hairloss retardation that contain the extract of omentum (a membrane which covers the intestine). It then contracted with an outside party for the manufacture and sale of a cosmetic hair and skin product containing omentum, called Omexin.

Angio and Lilly entered into a "License and Sublicense Agreement" on January 9, 1987. Angio granted Lilly an exclusive world-wide license (with the exception of the Asian market) to purchase omental extract from Angio and to make and sell commercial products using omentum. Lilly agreed to conduct tests of safety and efficacy of omental extracts and gangliosides,

report results to Angio, and market the tested products through Elizabeth Arden, Inc., paying royalties to Angio. The parties amended the agreement twice.

In August, 1987 the parties agreed to terminate the licensing agreement and ended their relationship on August 19, 1987. The termination agreement stipulated that Lilly must maintain confidentiality regarding any research finding made under the licensing agreement, that Angio would be the sole and exclusive owner of all results and studies, reports and raw data, and that defendant guarantees the validity and scientific integrity of all research materials. Angio alleges that despite numerous demands for reports and raw data prepared by Lilly, Lilly has failed to supply the requested material.

On February 12, 1988, Lilly demanded payment from Angio of a minimum of $550,000.00 for expenses allegedly incurred while testing the omental products. Angio argues that the payment charge is not for legitimate tests made under the agreement, but for worthless and flawed tests negligently and recklessly conducted. Angio also alleges that Lilly improperly billed Angio for the tests when Lilly had previously agreed to bear the financial burden of research. Despite this purported agreement, Angio further alleges that it repeatedly requested specifications of research expenditures but that Lilly failed to supply such specifications.

Pursuant to the terms of the termination agreement, Angio paid Lilly $260,546.78 on June 21, 1988. Lilly accepted payment but failed to supply the research data to Angio as it had promised.

Angio and Europa Hair Research, who is not a party to this action, entered into an exclusive distributorship agreement on December 16, 1987 whereby Europa was obligated to develop and produce television programs designed to promote the sale of Omexin. In one of the programs produced, "Can You Beat Baldness?: Looking Closer", the Europa representative stated that:

We've had extensive testing done by Eli Lilly and Company, which is a giant pharmaceutical firm. And the facts are established. Omexin has no side affects. There are no adverse reactions. It's a proven fact. Omexin is completely safe.

Several individuals reportedly made inquiries to Lilly Consumer Technical Services and Media Relations departments (and other departments of Lilly) regarding Europa's statements. Lilly personnel allegedly responded with the following statements:

a) Lilly has nothing to do with [Omexin] ... the company has nothing to do with it, that's false advertising.

b) [I]t's not a product of ours. I think in that particular ad, from what I've heard other people say, the name Lilly comes up in this respect: they claim that Lilly has done some research on this particular drug and that is not true.

c) [W]e're not associated with it.

d) That is not a Lilly product and that is not officially sanctioned by this company ... That program is misleading in that aspect.

e) [T]hat is simply not one of our products. We've either notified or are in the process of notifying the company that they are out of line on that.

These statements form the basis of the present dispute over the slander and trade libel issues. Angio contends that all of the above statements are defamatory of Angio and of Omexin but emphasizes comments made in (a), (d) and (e), referring to "false advertising", "misleading" and "out of line" as particularly harmful.

Lilly has moved to dismiss the claims of slander per se and trade libel. Lilly claims that the allegedly defaming statements are not defamatory, that they are not imputable to the plaintiff, that they did not disparage the product Omexin, and that special damages were not pleaded and proven as required. Angio argues that the alleged defamatory statements qualify as a claim of slander per se, which does not require pleading of special damages. Angio has also filed a claim of trade libel arguing that statements made by Lilly's employees disparaged plaintiff's product (Omexin). Angio contends that it has met the require-

ment of maintaining a claim of trade libel by pleading as special damages its attorneys' fees and lost executive time.

## ANALYSIS

■ On a 12(b)(6) motion, the plaintiff's allegations are to be taken as true and the complaint is to be viewed in the light most favorable to the plaintiff. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). As mentioned above, Angio first claims that Lilly's statements were per se slanderous. An action for slander exists to compensate a party for injuries to reputation caused by malicious or scandalous words spoken by another. 43 N.Y.Jur.2d, *Defamation* § 1, at 498 (1985); *Terwilliger v. Wands,* 17 N.Y. 54 (1858). To create liability for defamation there must be:

(1) a false and defamatory statement;

(2) unprivileged publication to a third party;

(3) fault amounting at least to negligence on the part of the publisher; and

(4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Restatement (Second) of Torts § 558, at 155 (1964). For statements to be actionable per se, the defamatory character of the words must be such that injury to the person's reputation is a natural and proximate consequence. *See Corrigan v. Bobbs–Merrill Co.,* 228 N.Y. 58, 66, 126 N.E. 260, 263 (1920). In a per se action, the legal injury is presumed from the fact that publication occurred and no special damages need be shown. *Id.* On the other hand, if the words complained of do not fall into one of the categories below, special damages must be alleged in order for the plaintiff to state a claim.

■ Under New York law, words are per se slanderous if they import criminal activity, impute an offensive disease, would tend to injure a party's trade, occupation or business, or impute unchastity or homosexuality. 43 N.Y.Jur.2d, *supra,* at 498; *Sadowy v. Sony Corp.,* 496 F.Supp. 1071, 1077 (S.D.N.Y.1980). It is a "well-estab-

lished principle that it is for the Court to decide whether the statements complained of are 'reasonably susceptible of a defamatory connotation', thus warranting submission of the issue to the trier of fact." *Silsdorf v. Levine,* 59 N.Y.S.2d 8, 12–13, 449 N.E.2d 716, 719, 462 N.Y.S.2d 822, 825, *cert. denied,* 464 U.S. 831, 104 S.Ct. 109, 78 L.Ed.2d 111 (1983) (quoting *James v. Gannett Co.,* 40 N.Y.2d 415, 419, 353 N.E.2d 834, 837, 386 N.Y.S.2d 871, 874 (1976)). To determine whether a statement is per se actionable, we must look at whether the character of the language used, in the context of the entire publication, as well as the circumstances of its issuance, would naturally import one of the above mentioned charges, in the mind of the average person. *James,* 40 N.Y.2d at 419, 353 N.E.2d at 838, 386 N.Y.S.2d at 874.

■ Although it is unclear that we have the entire publication(s) of the allegedly defamatory statements before us, we do have enough to determine the context and circumstances surrounding the publications. Angio basically complains that the above enumerated statements injure it in its business or trade by imputing to it fraud, dishonesty, and unfitness. Specifically, it claims that the terms used, "false advertising," "misleading" and "out of line," may possibly be interpreted as importing dishonesty in its advertising practices and unreliability in its safety claims. We believe that it is possible for a jury to find that the alleged statements are defamatory, and we thus decline, on that ground, to dismiss the claims. *See Payrolls & Tabulating, Inc. v. Sperry Rand Corp.,* 22 A.D.2d 595, 257 N.Y.S.2d 884, 887 (1st Dep't 1965) ("[I]f the disparagement of goods or of their quality also directly impeaches the knowledge, skill, integrity, etc. of the owner of the goods as an individual or in respect to his business methods, it is actionable per se ..."). We will let a jury decide whether the statements are in fact defamatory. *Bee Publications Inc. v. Cheektowaga Times, Inc.,* 107 A.D.2d 382, 386, 485 N.Y.S.2d 885, 888 (4th Dep't 1985); *see also November v. Time, Inc.,* 13 N.Y.2d 175, 179, 194 N.E.2d 126, 129, 244 N.Y.S.2d

309, 312 (1963) (Where "[n]o single sentence or declaration of alleged fact is directly and boldly defamatory ... a jury should decide whether a libelous intendment 'would naturally be given to it by the reading public acquainted with the parties and the subject matter.' ") (quoting *Cassidy v. Gannett Co.*, 173 Misc. 634, 640, 18 N.Y.S.2d 729, 734 (Sup.Ct.1940).

■ Lilly further contends, relying principally on *Rizzuto v. Nexxus Products Co.*, 641 F.Supp. 473, 478, *aff'd*, 810 F.2d 1161 (2d Cir.1986), that the statements attributed to its employees were merely expressions of opinion, and as such are not actionable. Even if these statements were opinions, they would only be constitutionally privileged if they were accompanied by facts supporting the opinions. *E.g., Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 380, 366 N.E.2d 1299, 1306, 397 N.Y.S.2d 943, 950 (1977). Because no facts accompanied the statements by the Lilly employees, it cannot be said that these statements are not actionable. We believe that had there been further amplification of the facts surrounding the contractual relationship of the parties, it might have been possible to construe the statements as opinion. However, the statements, as alleged in the amended complaint, do not provide sufficient factual support to be classified as opinion. Accordingly, we reject Lilly's contention that the statements are opinion and we find as a matter of law that they are actionable.

■ Lilly also argues that the claims should be dismissed because the responses allegedly given by Lilly employees never made a direct accusation of illegal activity by *Angio*. They claim that the statements attributed to Lilly suggesting false advertising refer to the distributor, *Europa*, and its marketing of the plaintiff's product, not to the plaintiff. *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss at 10 ("Dft.'s Mem.").

Lilly relies heavily on *Drug Research Corp. v. Curtis Publishing Co.*, 7 N.Y.2d 435, 166 N.E.2d 319, 199 N.Y.S.2d 33 (1960), to support is proposition that the statements are not imputable to Angio. In

that case, the plaintiff, Drug Research Corp., manufactured and distributed a weight-reducing pill. A third party, Wonder Drug Corp., also distributed the pill. An article published in the *Saturday Evening Post*, naming only Wonder Drug, stated that the pill was "the hottest gimmick in the mail-fraud field today." *Id.* at 437, 166 N.E.2d at 321, 199 N.Y.S.2d at 34. The New York Court of Appeals found that while it was "obvious" that the article concerned Wonder Drug, a "fair" reading of the article in its entirety, which did not mention Drug Research, did not support Drug Research's claim that the article was "of and concerning" Drug Research. Accordingly, the Court of Appeals reversed the lower courts which had found that the statements to be imputable to the plaintiff.

*Drug Research* is distinguishable in the instant case as the statements attributed to the Lilly employees do not name any company. Rather, as in statement (e) enumerated above, it is unclear which "company" Lilly was in the process of notifying that they were "out of line." In addition, in statement (b), it is not clear to whom the word "they" refers. Thus, it is possible that a listener would or could reasonably assume that the statements related to Angio, the manufacturer of the product or Europa, the exclusive distributor. *See Harwood Pharmacal Co. v. National Broadcasting Co.*, 9 N.Y.2d 460, 463, 174 N.E.2d 602, 603–04, 214 N.Y.S.2d 725, 727 (1961) (it could reasonably be inferred that manufacturer of product was defamed although not directly named). Because we believe that the fact that no company was named in the alleged defamations creates an ambiguity as to whether the words were spoken "of and concerning the plaintiff," and that extrinsic facts may be necessary to show that the words relate to the plaintiff, the question of whether the statements are in fact imputable to the plaintiff is, like the question of whether the statements are defamatory, better left to a jury. *See Bee Publications Inc. v. Cheektowaga Times, Inc.*, 107 A.D.2d at 386, 485 N.Y. S.2d at 888; *Bruno v. New York News,*

*Inc.,* 89 A.D.2d 260, 263, 456 N.Y.S.2d 837, 839–40 (3d Dep't 1982).

With respect to the seventh claim in the Amended Complaint, namely the trade libel claim, we grant Lilly's motion to dismiss. Trade libel or product disparagement is an action to recover for words or conduct which tend to disparage or negatively reflect upon the condition, value or quality of a product or property. 44 N.Y.Jur.2d, *supra,* § 175, at 189–90. The elements of a trade libel claim which must be proven are:

(1) falsity of the statement,

(2) publication to a third person,

(3) malice (express or implied), and

(4) proven special damages.

44 N.Y.Jur.2d, *supra,* § 178, at 192; *see Drug Research,* 7 N.Y.2d at 440, 166 N.E.2d at 322, 199 N.Y.S.2d at 37.

Language which merely disparages a product is not actionable unless special damages are pleaded and it appears that such damage is a natural and immediate consequence of the disparaging statements. *See Drug Research, id.; Le Massena v. Storm,* 62 A.D. 150, 154, 70 N.Y.S. 882, 884 (1st Dep't.1901). If, however, the disparaging statements impeach the business methods or integrity of the plaintiff himself, special damages need not be proved as a direct accusation. The action would then qualify as slander per se instead of trade libel. *Drug Research,* 7 N.Y.2d at 440, 166 N.E.2d at 322, 199 N.Y.S.2d at 37.

In the instant case, Angio claims that the statements made by Lilly employees defamed Angio's integrity in its business, thus constituting a slander per se and obviating the need for special damages. Additionally, plaintiff asserts that Lilly has disparaged the product Omexin because Lilly's denial of involvement with research on Omexin would cause a listener to assume that Omexin was not meeting safety and efficacy standards. Angio did not, however, plead special damages, i.e. loss of customers, and insists that legal fees and executive time qualify as special damages. Thus, before addressing the issue of whether the product was disparaged, we must examine whether legal fees and executive time qualify as special damages.

In *Gorman v. Kings Mercantile Co.,* 36 Misc.2d 38, 231 N.Y.S.2d 642 (Sup.Ct.1962) (action to recover $6,500 from an escrow agreement on a mortgage), the court stated that "legal expenses are not recoverable as special or general damages." *Id.* at 36 Misc.2d at 39, 231 N.Y.S.2d at 644. In *Wallace v. Weiss,* 82 Misc.2d 1053, 372 N.Y.S.2d 416 (Sup.Ct.1975) (cause of action to recover money damages for the unauthorized use of plaintiff's photograph on the front cover of a magazine published by university student organization), the court concluded that it was

undisputed that the plaintiff has incurred no out of pocket loss, except attorney's fees for the commencement of this action. *The attorney's fees do not constitute an item of damage in a libel action.*

*Id.,* at 82 Misc.2d at 1056, 372 N.Y.S.2d at 421 (emphasis added).

All of the cases cited by plaintiff include instances where money was awarded for special damages *including* legal fees. *See Wachs v. Winter,* 569 F.Supp. 1438, 1448 (E.D.N.Y.1983); *Hogan v. Herald Co.,* 84 A.D.2d 470, 481, 446 N.Y.S.2d 836, 843 (4th Dept.1982), *aff'd,* 58 N.Y.2d 630, 444 N.E.2d 1002, 458 N.Y.S.2d 538 (1982). In no case, however, were legal fees the sole damages incurred, as is claimed here. Accordingly, we determine that legal fees and executive time, standing alone do not comprise special damages, and, therefore, that the trade libel claim is insufficiently pleaded. Plaintiff's claim for trade libel is hereby dismissed.

## CONCLUSION

Lilly's motion is granted to the extent that the seventh cause of action, the trade libel claim, is dismissed. All other aspects of the motion are denied.

SO ORDERED.