**FACTORS ETC., INC. and Boxcar Enterprises, Inc., Plaintiffs,**

v.

**PRO ARTS, INC. and the Stop and Shop Companies, Inc., Defendants.**

**No. 77 Civ. 4704 (CHT).**

United States District Court, S. D. New York.

Oct. 13, 1977.

See also 444 F.Supp. 279.

Golenbock & Barell, New York City, Ervin, Cohen & Jessup, Beverly Hills, Cal., for plaintiffs.

Blum, Moscovitz, Friedman & Kaplan, New York City, Raymond E. Scott, Cullen, Settle, Sloman & Cantor, P.C., Detroit, Mich., for defendants.

## OPINION

TENNEY, District Judge.

This is a companion action to *Factors Etc., Inc. v. Creative Card Co.*, 444 F.Supp. 279 (S.D.N.Y.1977), in which an opinion was filed October 12, 1977 ("the *Creative Card* opinion"). The same plaintiffs, Factors Etc., Inc. ("Factors") and Boxcar Enterprises, Inc., claiming to have the sole right to exploit through commercial souvenir merchandise the name and visage of the late Elvis Presley, are suing still another manufacturer of an allegedly infringing Presley poster, Pro Arts, Inc. ("Pro Arts"), and a retail distributor, The Stop and Shop Companies, Inc. ("Stop & Shop"), which sells that item. Plaintiffs have requested a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure ("Rules"), and defendant Pro Arts has moved pursuant to Rule 12(b) to dismiss for want of personal jurisdiction and/or improper venue, or, in the alternative, for transfer to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a) or for a stay of this action pending the outcome of proceedings between defendant Pro Arts and

plaintiff Factors in an action filed in that district.[1]

For the reasons set out below and those incorporated by reference to the *Creative Card* opinion, defendant Pro Arts' motions to dismiss, transfer or stay are denied, and plaintiffs' motion for a preliminary injunction is granted.

█ Plaintiffs in this action are asserting an exclusive right to exploit the name and face of the late Elvis Presley, based on their alleged succession to an alienable "right of publicity" which the entertainer exploited in his own lifetime. In the *Creative Card* opinion this Court fully explored both the theoretical base of this claim and the validity of plaintiffs' title, concluding that the right existed, was a species of property inhering in Elvis Presley, was alienable, and because it was exploited to the entertainer's financial advantage in life, passed like any other intangible property at his death, in this case to plaintiffs. The infringement of that right was a tort in the nature of unfair competition.

The same analysis applies in this case. However, for purposes of the instant action the Court must address, at least as to defendant Pro Arts, the questions of jurisdiction and venue and the contention that this matter would be more properly heard in the Northern District of Ohio.

The defendant is an Ohio corporation. Affidavit of Michael P. Trikilis, President of Pro Arts, Inc., sworn to Oct. 4, 1977, ¶ 1. Pro Arts has "sold or shipped" less than one percent of its Presley posters in or into the state of New York. *Id.* ¶ 5. Defendant does not supply the date as of which that figure was current. In a later statement, Mr. Trikilis reiterates that less than one per cent of the posters "were sold and delivered to New York." Trikilis Affidavit, sworn to Oct. 10, 1977, ¶ 12. The balance of this statement is given over to general sales figures for the Presley poster and projections of future sales, none of which allude directly to distribution in the New York market. Affiant Trikilis states that as of October 6, 1977 Pro Arts, Inc. made total gross sales of its allegedly infringing Elvis Presley poster in the amount of $940,851.40, *id.* ¶ 4, and that weekly sales volume for the item is expected to increase until Christmas of 1977. *Id.* ¶ 7. Nothing further is said concerning the volume of sales in New York, where the poster is apparently available for purchase at Bradlees Mini City, New City, New York. Rohner Affidavit, sworn to Sept. 23, 1977, ¶ 2.

*Jurisdiction*

█ Despite the paucity of fact, the Court has no difficulty in concluding that it has jurisdiction over defendant Pro Arts. In this diversity case, the law of New York dictates whether the Court has personal jurisdiction over the foreign corporation. *Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2d Cir. 1963) (en banc). The operative statute is New York C.P.L.R. § 302(a)(2), which gives New York courts jurisdiction over any non-domiciliary who commits "a tortious act within the state." Although the burden is on plaintiff to sustain its assertion of jurisdiction, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Top Form Mills v. Sociedad Nationale Industria Applicazione Viscosa*, 428 F.Supp. 1237 (S.D.N.Y. 1977), the Court may examine affidavits to establish jurisdictional facts. *H. L. Moore Drug Exchange, Inc. v. Smith, Kline & French Labs.*, 384 F.2d 97 (2d Cir. 1967) (per curiam).

1. The position of defendant Stop & Shop is unclear. Although they are purportedly represented by counsel for Pro Arts, Inc., Motion to Admit Raymond E. Scott Pursuant to Local Rule 4, dated September 30, 1977, all argument held at hearings before this Court on October 3, 1977 and again on October 5, 1977 was directed to the Pro Arts defense. All papers submitted concern Pro Arts exclusively. Accordingly, for purposes of the 12(b) motion to dismiss the Court will accept as true the allegations in the complaint that defendant Stop & Shop is a Massachusetts corporation qualified to do business in New York and doing business here through its Bradlees Stores division, Complaint ¶ 9, and will assume for purposes of preliminary relief that it has jurisdiction over defendant Stop & Shop and that venue is properly laid in this district.

Having isolated defendant's activity as the tort of unfair competition, the Court is free to apply the rule that in unfair competition "the wrong takes place . . where the passing off occurs," *i. e.*, at the point of consumer purchase. *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir.), *cert. denied*, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); *see Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886 (S.D.N.Y.1974); *Car-Freshner Corp. v. Broadway Mfg. Co.*, 337 F.Supp. 618 (S.D.N.Y.1971). Therefore, based on the fact that the allegedly infringing Pro Arts Presley poster was sold in this district, the Court can conclude that defendant Pro Arts' conduct falls squarely within N.Y.C.P. L.R. § 302(a)(2), "which requires no specified level of activity within the State, but only that the plaintiff suffer some damage as a result of a tortious act committed by defendant or its agent in New York." *Honda, supra*, 374 F.Supp. at 889; *see Feathers v. McLucas*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

### Venue

The propriety of venue in this district is a more difficult question. The choice of venue is governed in this diversity action by 28 U.S.C. § 1391(a), which permits venue to be laid, inter alia, "where the claim arose." The interpretation of that language has generated a test of "more than miniscule contacts" which this Court adopted in the *Creative Cards* opinion. *See Tefal, S.A. v. Products Int'l Co.*, 529 F.2d 495 (3d Cir. 1976); *Transamerica Corp. v. Transfer Planning, Inc.*, 419 F.Supp. 1261 (S.D.N.Y. 1976); *Honda, supra*. However, the test is difficult to apply when defendant Pro Arts tells us nothing more than that it has "sold and delivered" less than one percent of its Presley posters to New York. Trikilis Affidavit, sworn to Oct. 10, 1977, ¶ 12. This figure does not reveal what percentage of the allegedly infringing posters is on order and waiting to be shipped and sold here. Nor does it address the size of the New York market compared to other districts. The Court can only extrapolate from Pro Arts' total sales figures for the Presley poster, *i. e.*, $940,851.40 through October 6, 1977, *id.* ¶ 4, to posit that it has sold at least $9,000 worth of the item in New York to date. This is less than actual sales made or contemplated, but even so it might satisfy the *Honda* "less than miniscule contacts" test to determine "where the claim arose" for purposes of section 1391(a).

However, the Court need not rely solely on section 1391(a), as there is yet another basis for laying venue in this district. 28 U.S.C. § 1391(c) provides that "[a] corporation may be sued in any judicial district in which it is . . . doing business." Plaintiffs have alleged that defendant Pro Arts is "doing business" here within the meaning of that section, and since this allegation goes uncontroverted by that defendant, the Court will treat it as true for the purposes of this motion to dismiss.

### Other Litigation Between Factors and Pro Arts

By a complaint filed in the Northern District of Ohio on September 21, 1977, five days before the instant action was commenced ("the Ohio action"), defendant Pro Arts brought suit against plaintiff Factors for, inter alia, breach of contract and sought a declaratory judgment involving many aspects of the business relationship between the parties which are not before this Court. However, the Pro Arts right to produce its Presley poster is raised in the Ohio action. Pro Arts there claims in the alternative that Factors has no exclusive right to sublicense reproduction of the Presley visage or, if it has, that it has a contract with Pro Arts affording the latter first right of refusal for any sublicensing agreement. Pro Arts, in its motion pursuant to 28 U.S.C. § 1404(a), asks this Court to exercise its discretion and to transfer the instant action to the Northern District of Ohio. Despite serious questions as to which party first "reached the courthouse door" and what prompted the race, *see Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661 (5th Cir. 1967), if it were true that the two litigations presented the same issues the

292

Court might be persuaded by the counsel of section 1404(a) to transfer the instant action "in the interest of justice." *See Farbenfabriken Bayer A.G. v. National Distillers & Chem. Corp.*, 324 F.Supp. 156 (S.D.N. Y.1971), and cases cited therein. However, this Court is called upon in this and a related action, *i. e., Creative Card*, to determine only the right of plaintiffs to the exclusive commercial exploitation of the Elvis Presley name and visage through souvenir merchandise. That issue is but a tiny portion of the matter before the Northern District of Ohio, where Factors and Pro Arts are embroiled in a complex commercial battle involving many other celebrities, the interpretation of contracts, etc. Furthermore, in view of the apparent disposition of the Ohio courts to recognize the "right of publicity," *see Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977), this Court believes that a conclusion on the merits of the narrow issue presented in this case will not unduly raise the spectre of inconsistent results in the Northern District of Ohio.

Accordingly, defendant Pro Arts' motions to dismiss, stay or transfer are in all respects denied, and plaintiff's motion for a preliminary injunction is granted. Defendants Pro Arts, Inc. and The Stop and Shop Companies, Inc. will be enjoined from manufacturing, distributing, selling or by any other means profiting from souvenir merchandise bearing the name or likeness of the late Elvis Presley until the merits of the case are determined.

Order is being filed simultaneously herewith.