**Jackie Collins LERMAN, Plaintiff,**

v.

**CHUCKLEBERRY PUBLISHING, INC. and Publishers Distributing Corporation, Defendants.**

**No. 80 Civ. 1658.**

United States District Court, S. D. New York.

Aug. 17, 1981.

**230**

Grutman, Schafrann & Miller, New York City, for plaintiff; Jeffrey H. Daichman, New York City, of counsel.

Goldschmidt, Fredericks, Kurzman & Oshatz, New York City, for Chuckleberry; Richard Waxman, New York City, of counsel.

Greenbaum, Wolff & Ernst, New York City, for PDC; Marcia B. Paul, Jerry Simon Chasen, New York City, of counsel.

## OPINION

WERKER, District Judge.

This action for libel, invasion of privacy and violation of the right of publicity was brought by plaintiff Jackie Collins Lerman, a citizen of the United Kingdom, against New York defendants Chuckleberry Publishing, Inc. ("Chuckleberry") and Publishers Distributing Corporation ("PDC"). This Court granted plaintiff's motions for a preliminary injunction on March 31, 1980 and for partial summary judgment on her invasion of privacy claims against defendants under §§ 50 and 51 of the New York Civil Rights Law on July 3, 1980. Subsequently, this Court denied defendants' motion for reconsideration on September 2, 1980. *Lerman v. Chuckleberry Publishing Co.*, 496 F.Supp. 1105 (S.D.N.Y.1980).

This case is presently before the court on several motions. First, plaintiff moves for leave to amend her original complaint pursuant to Fed.R.Civ.P. 15(a). Second, defendants PDC and Chuckleberry move for summary judgment pursuant to Fed.R. Civ.P. 56 on the issues of libel and violation of the right of publicity. Third, plaintiff moves, pursuant to Fed.R.Civ.P. 37 for an order striking the answer and counterclaim of defendant Chuckleberry, entering a default judgment against Chuckleberry and awarding plaintiff the reasonable expenses, including attorney's fees, caused by the failure of Chuckleberry to comply with discovery orders in this action. Finally, defendant PDC cross moves for an order, pursuant to Fed.R.Civ.P. 37, 30, 42, 45 and 55 to preclude co-defendant Chuckleberry from opposing PDC's cross-claim for indemnity and ordering that judgment be entered thereupon if PDC is found liable to plaintiff; awarding PDC attorneys' fees in the amount of $1,000; severing the claims of plaintiff against PDC from plaintiff's claims against Chuckleberry for trial; and staying trial against PDC pending an inquest on damages against Chuckleberry.

This action arises from the publication of a picture of a nude woman, incorrectly identified as plaintiff, in the May, 1980 issue of *Adelina*, and the publication of plaintiff's name on the cover of *Adelina* under the heading "In the Nude from the Playmen Archives." The May, 1980 issue of *Adelina* was published and distributed by defendants Chuckleberry and PDC respec-

tively. The details of the dispute between these parties are set forth in this court's decision dated July 3, 1980, *Lerman v. Chuckleberry Publishing Co.*, 496 F.Supp. 1105 (S.D.N.Y.1980), and this decision assumes familiarity with the prior opinion.

## PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Plaintiff's Rule 15(a) motion for leave to amend the complant is based on the republication, without plantiff's consent, of the cover of the May, 1980 issue of *Adelina*, subsequent to the commencement of this lawsuit, in advertisements for the sale of *Adelina* in the June, 1980 and January, 1981 issues of *Adelina* and in the February/March, 1981 issue of *Rooster*, the new title of *Adelina*. The statement "In the Nude from the Playmen Archives . . . Jackie Collins" is clearly visible in the advertisements.

■ Although plaintiff has moved to amend the complaint it appears that the causes of action she seeks to assert are based on events arising after the date the first amended pleading was filed. Thus, the motion to amend will be treated as a motion to serve a supplemental pleading pursuant to Fed.R.Civ.P. 15(d).

Defendant PDC opposes plaintiff's motion on four grounds: (1) that plaintiff failed to comply with Civil Rule 3(b) by bringing her motion by notice and affidavit with no supporting memorandum of law; (2) that the additional claims are legally insufficient; (3) that plaintiff has unduly delayed in filing this motion; and (4) that PDC will suffer prejudice if this court grants plaintiff leave to amend. I do not find any of these grounds sufficiently compelling and grant plaintiff leave to supplement her original complaint.

Under Rule 15(d), the court in its discretion may grant leave to file a supplemental pleading at any time during which the proceeding is before the court, when to do so "will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice

the rights of any of the other parties to the action." C. Wright & A. Miller, 6 *Federal Practice and Procedure* § 1504 (1971).

■ While a failure to "serve and file with the motion papers a memorandum setting forth the points and authorities relied on . . . may be deemed sufficient cause for the denial of the motion" in appropriate cases, Civil Rule 3(b), I do not find this to be such a case. This motion was brought to the court's attention by letter and subsequently discussed at a pretrial conference held on March 27, 1981 at which time the court indicated that plaintiff's motion to amend would be favorably entertained. Under the circumstances, denial of the motion would be inappropriate.

■ PDC's arguments addressing the sufficiency of the proposed supplements to the complaint are unavailing on the instant motion. Unless a proposed amendment is clearly frivolous or legally insufficient on its face, the substantive merits of a claim or defense should not be considered on a motion to amend. *Nyscoseal, Inc. v. Parke, Davis & Co.*, 28 F.R.D. 24, 25 (S.D.N.Y. 1961). None of plaintiff's claims here appear to be frivolous. Moreover, PDC's argument that it was not the distributor of the June, 1980 issue of *Adelina* is a question of fact to be determined on the merits and not at this stage of the litigation.

■ In addition, it does not appear that plaintiff has unduly delayed in making this motion. The cover of *Adelina* on which plaintiff's name appeared was republished three times subsequent to the granting of the preliminary injunction and the filing of the original complaint, with the last republication occurring in January 1981. Plaintiff's claims concerning the republications hardly present new issues as PDC argues. Rather, these additional claims arise out of the same series of transactions and simply conform the pleadings to the evidence subsequently brought to light. Furthermore, as the motion to amend was made while summary judgment motions were pending before the court, PDC's allegation that plaintiff has purposefully waited "until the

eve of trial" to move for leave to amend is without merit. Finally, PDC does not claim that it will be prejudiced in any particular way such as extensive additional discovery, inability to prepare a case on the issues, or the added expense or burden of a more complicated and lengthy trial. In light of the above, plaintiff's motion to supplement the complaint is granted.

## MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is to be granted only where there is no genuine issue of material fact. *SEC v. Research Automation Corp.*, 585 F.2d 31 (2d Cir. 1978). The evidence presented must be considered in the light most favorable to the nonmoving party "with the burden on the moving party to demonstrate the absence of any factual issue genuinely in dispute." *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975).

### RIGHT OF PUBLICITY

■ Courts in this circuit, interpreting New York law, have recognized a common law "right of publicity" as distinct from the statutory right of privacy under §§ 50 and 51 of the New York Civil Rights Law. *Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2d Cir.), *cert. denied*, 346 U.S. 816, 74 S.Ct. 26, 98 L.Ed. 343 (1953); *Ali v. Playgirl, Inc.*, 447 F.Supp. 723, 728 (S.D.N.Y.1978); M. Nimmer, *The Right of Publicity*, 19 Law & Contemp. Prob. 203 (1954). The right of publicity comprises a person's right to own, protect and commercially exploit his own name, likeness and persona. In *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 576, 97 S.Ct. 2849, 2857, 53 L.Ed.2d 965 (1977), the Supreme Court noted that the state's interest in protecting an individual's right of publicity " 'is the straightforward one of preventing unjust enrichment by the theft of good will. No social purpose is served by having the defendant get free some aspect of the plaintiff that would have market value and for which he would normally pay.' " *Id.* (quoting Kalven, Privacy in Tort Law—Were Warren and Brandeis Wrong?, 31 Law & Contemp. Prob. 326, 331 (1966)).

■ An individual claiming a violation of his right of publicity must show: (1) that his name or likeness has publicity value; (2) that he himself has "exploited" his name or likeness by acting "in such a way as to evidence his ... own recognition of the extrinsic commercial value of his ... name or likeness, and manifested that recognition in some overt manner ..." *Hicks v. Casablanca Records*, 464 F.Supp. 426, 429 (S.D.N.Y.1978); *see Factors Etc., Inc. v. Creative Card Co.*, 444 F.Supp. 279, 283 (S.D.N.Y. 1977); *Factors, Etc., Inc. v. Pro Arts, Inc.*, 444 F.Supp. 288 (S.D.N.Y.1977), *aff'd*, 579 F.2d 215 (2d Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); and (3) that defendant has appropriated this right of publicity, without consent, for advertising purposes or for the purposes of trade. *Ann-Margret v. High Society Magazine, Inc.*, 498 F.Supp. 401, 406 (S.D.N.Y.1980).

■ A close scrutiny of the numerous press releases, interviews, and newspaper and magazine articles written about plaintiff Jackie Collins Lerman leads me to conclude that the name and persona of this celebrated novelist and screenwriter, whose picture, at one time, graced even the subway stations of New York, is commercially valuable, or, stated differently, has publicity value. Thus, plaintiff has established the first element of the cause of action. Plaintiff's use of her name and likeness on posters, on the jackets of her novels and in interviews in connection with the marketing of her books and screenplays sufficiently establishes the second element of the cause of action, self-exploitation for the purposes of her claimed right of publicity.

The third element of plaintiff's claim, use of plaintiff's likeness by defendants for purposes of trade, has already been determined by this court. In granting plaintiff's motion for partial summary judgment on the issue of invasion of privacy, defendants' use of plaintiff's name in the May, 1980 issue of *Adelina* was found to be "solely for the purpose of enhancing the sales of the magazines ... for a commercially exploitative

effect rather than for the purpose of informing the public about a newsworthy event." *Lerman v. Chuckleberry Publishing, Inc.*, 496 F.Supp. at 1108.

■ Having concluded that no genuine issues of fact exist with regard to plaintiff's cause of action for violation of her right of publicity, I grant summary judgment in favor of plaintiff on this claim as a matter of law. PDC's motion and Chuckleberry's cross-motion [1] for summary judgment pursuant to Fed.R.Civ.P. 56 on the issue of right of publicity are denied.

### LIBEL

■ Whether the plaintiff in a libel action is a public or private figure is a question of law to be determined by the court. *Wolston v. Reader's Digest Association*, 578 F.2d 427, 429 (D.C. Cir. 1978), *rev'd on other grounds*, 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979); *Hotchner v. Castillo-Puche*, 404 F.Supp. 1041, 1045 (S.D.N.Y. 1975), *rev'd on other grounds*, 551 F.2d 910 (2d Cir. 1977).

■ Defendant PDC contends that Jackie Collins Lerman is a public figure for purposes of her libel claim and thus the standard to be applied in determining defendants' potential liability is that of "actual malice" as set forth in *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964); *see Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Under the *New York Times* test, a public figure may recover damages for libel only if he can prove with "convincing clarity" that the defamatory publication "was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* Characterizing "(t)hose who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention" as public figures, the Court, in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323,

342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974), delineated two classes of public figures to which the "actual malice" standard applies. The first is public figures for all purposes, or those who have achieved "pervasive fame or notoriety." The second is public figures "for a limited range of issues," or those who voluntarily inject themselves or are drawn into the forefront of a "public controversy." In this latter class of "limited purpose" public figures, the relevant examination turns on "the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Gertz v. Robert Welch, Inc.*, 418 U.S. at 352, 94 S.Ct. at 3013; *Wolston v. Reader's Digest Association, Inc.*, 443 U.S. 157, 167, 99 S.Ct. 2701, 2707, 61 L.Ed.2d 450 (1979).

PDC concedes that although Jackie Collins Lerman is well-known in some circles, not having achieved "general fame or notoriety in the community and pervasive involvement in the affairs of society," *Gertz v. Robert Welch, Inc.*, 418 U.S. at 351–52, 94 S.Ct. at 3013, she cannot be considered "one of that small group of individuals who are public figures for all purposes." *Wolston v. Reader's Digest Association, Inc.*, 443 U.S. 157, 165, 99 S.Ct. 2701, 2706, 61 L.Ed.2d 450 (1979). Instead, PDC argues that plaintiff is a limited purpose public figure because she has "thrust [herself] to the forefront of [a] particular public [controversy] in order to influence the resolution of the issues involved." *Gertz v. Robert Welch, Inc.*, 418 U.S. at 345, 94 S.Ct. at 3009. According to PDC, plaintiff's status as the writer of standard, rather pedestrian pornography and her frank discussions of sexuality in interviews in connection with her books make plaintiff a public figure for the limited purpose of promoting, publicizing and selling sex.

As recently reiterated by the Supreme Court, it is the "particular controversy giving rise to the defamation" that must be considered in analyzing a libel plaintiff's

---

**1.** Chuckleberry has not submitted its own arguments or legal authorities but relies instead on the papers submitted by PDC.

status. *Wolston v. Reader's Digest Association, Inc.*, 443 U.S. at 167, 99 S.Ct. at 2707. In this case the defamation arose from a pictorial essay entitled "Archives" in the May, 1980 issue of the magazine *Adelina*. The article purports to display erotic and nude photographs of well-known actresses who, "in the coming of age of American film-making—and American audiences—..., were given the opportunity to free their natural ability to express sexuality." Thus was presented "the pleasing result of this liberated attitude."

This introduction to the pictorial essay indicates that the particular public controversy giving rise to the defamation in this case, if it can be said that one exists at all, concerns the sexual liberation of actresses in American film. We must now examine whether this can be considered a public controversy and if so, whether plaintiff has thrust herself to the forefront of the controversy.

> A public controversy is not simply a matter of interest to the public; it must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way.... [E]ssentially private concerns or disagreements do not become public controversies simply because they attract attention. *Time Inc. v. Firestone*, 424 U.S. 448, 454–55 [96 S.Ct. 958, 965–66, 47 L.Ed.2d 154] ... (1976). Rather, a public controversy is a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants.
>
> Courts must exercise care in deciding what is a public controversy. Newsworthiness alone will not suffice, ....

*Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980), *cert. denied*, 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980).

It is difficult to conclude that the issue of sexual liberation of actresses in American film is more than a matter of general public interest that may be newsworthy. In my opinion, it simply cannot be said that there is a real dispute with respect to this matter,

the outcome of which affects the general public or some segment in an appreciable way. Indeed, public concern about the sexual liberation of actresses in American film certainly is no greater than the concern "shared by most" about the expenditure of public funds by federal agencies which was held to be insufficient to make the plaintiff in *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979), a public figure.

Furthermore, Lerman "at no time assumed any role of public prominence in the broad question of concern," *id.* at 135, 99 S.Ct. at 2688, if one can be said to exist, about the sexuality of actresses in American film. Lerman did not write about the sexual liberation of actresses on the screen and certainly did not inject her views into a controversy on this topic. Lerman herself never modeled and although she had a brief acting career, it does not appear that she ever appeared nude on the stage or the screen. Finally, although Lerman was photographed on several occasions for publicity purposes, she was never photographed in the nude.

█ Defendant's contention that plaintiff is a public figure for the limited purpose of promoting, publicizing and selling sex must be rejected. First, as discussed above, such a general characterization of the public controversy does not isolate with the required particularity, the controversy which gave rise to the defamation in this case. Second, the consequence of adopting defendants' analysis would be to expose any prominent author of novels about human sexuality who engages in conventional promotional activities to publicize them to the risk that intimate details of his personal life may be disclosed falsely by a news media clothed with the protections of *Times v. Sullivan* and its progeny. This result would be improper where the author has not injected his personal conduct or his own nudity into the public discussion. Furthermore, such an approach would undermine the legitimate interests of the states in protecting their citizenry from "the harm inflicted ... by defamatory falsehood." *Gertz v.*

*Robert Welch, Inc.,* 418 U.S. at 341, 94 S.Ct. at 3008.

A comparison of the facts in this case with those in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), is instructive. Gertz was a well-known attorney who had long been active in community and professional affairs, had published numerous books and articles on legal, political and literary subjects, was the subject of countless interviews, and consequently was well-known in certain circles. Nevertheless, he was found to be a private figure because he had not thrust himself to the forefront of the particular controversy which gave rise to the defamation. Similarly, in this case, although plaintiff is a successful novelist among a limited circle of readers, and has achieved some notoriety as a result of her views and works, she cannot be considered a public figure because she did not thrust herself to the forefront of a controversy concerning the sexual liberation of actresses in American film. *See Time Inc. v. Firestone,* 424 U.S. 448, 453, 96 S.Ct. 958, 964, 47 L.Ed.2d 154 (1976).

Thus, although plaintiff has a "public image" which has been exploited for the purpose of marketing her popular novels, defendants have not shown that plaintiff has thrust herself to the forefront of a public controversy such as to render her a limited purpose public figure for first amendment purposes. I, therefore, must conclude that plaintiff is a private figure for purposes of determining defendants' liability on the issue of libel.

■ Having determined that plaintiff is a private figure for purposes of first amendment analysis, the court must turn to New York law for the standards by which PDC's and Chuckleberry's conduct must be examined. Under New York law, publishers of defamatory falsehoods about a private individual in matters of legitimate public interest, may be held liable upon a showing that "the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Chapa-*

*deau v. Utica Observer-Dispatch, Inc.,* 38 N.Y.2d 196, 199, 341 N.E.2d 569, 571, 379 N.Y.S.2d 61, 63–64 (1975).

■ The New York courts have further limited the responsibility of republishers and distributors of defamatory statements. With respect to republishers, the New York courts hold that "a company or concern which simply republishes a work is entitled to place its reliance upon the research of the original publisher, absent a showing that the republisher 'had, or should have had, substantial reasons to question the accuracy of the articles or the *bona fides* of [the] reporter.'" *Karaduman v. Newsday, Inc.,* 51 N.Y.2d 531, 550, 416 N.E.2d 557, 566, 435 N.Y.S.2d 556, 565–66 (1980) (quoting *Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 383, 366 N.E.2d 1299, 1307, 397 N.Y.S.2d 943, 952, *cert. denied,* 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977)).

■ With respect to distributors, the New York courts have long held that vendors and distributors of defamatory publications are not liable if they neither know nor have reason to know of the defamation. *Balabanoff v. Fossani,* 192 Misc. 615, 81 N.Y.S.2d 732 (1948); *see Lewis v. Time, Inc.,* 83 F.R.D. 455 (E.D.Cal.1979); Restatement (Second) of Torts § 581 (1976). As discussed in the Restatement:

> [A] news dealer is not liable for defamatory statements appearing in the newspapers or magazines that he sells if he neither knows nor has reason to know of the defamatory article. The dealer is under no duty to examine the various publications that he offers for sale to ascertain whether they contain any defamatory items. Unless there are special circumstances that should warn the dealer that a particular publication is defamatory, he is under no duty to ascertain its innocent or defamatory character. On the other hand, when a dealer offers for sale a particular paper or magazine that notoriously persists in printing scandalous items, the vendor may do so at the risk

that any particular issue may contain defamatory language.

*Id.* at Comment d.

■ The conduct of Chuckleberry and PDC must be evaluated in accordance with these standards and if any genuine issues exist as to the material facts, summary judgment must be denied.

According to the affidavit of Walter Zacharias, the former President of Chuckleberry, the pictures which purport to be photographs of plaintiff that were published in the May, 1980 issue of *Adelina* were acquired by Chuckleberry from its licensor Tattilo Editrice SPA, the publisher of the Italian magazine, *Playmen.* The pictures previously had been published in the August 1979 issue of *Playmen* and Chuckleberry published them "by reason of the prior publication of materials by its licensor." Affid. of Walter Zacharias, sworn to March 28, 1980 at ¶ 2. As stated by Zacharias, Tattilo Editrice SPA:

"had acquired the materials from an ... *agent of Media Press International.* ... Our licensor has dealt with this company over a period of ten years and has never had an incident in which a claim was made with respect to materials published that a prior consent had not been obtained. Therefore, when our licensor published the materials in August 1979, they had every reason to believe that said publication was in all respects legally proper. When we republished said materials, we, likewise had reason to believe that we had a full and complete legal right to do so...."

*Id.* at ¶ 9.

From the foregoing, it appears that Chuckleberry was the republisher of the defamation originally published in *Playmen.* Accordingly, under New York law, it was entitled to rely on the research of the publisher, Tatillo Editrice SPA, unless it is demonstrated that Chuckleberry "had or should have had substantial reasons to question the accuracy of the article." *Karaduman v. Newsday, Inc.,* 51 N.Y.2d at 550; 416 N.E.2d at 566, 435 N.Y.S.2d at 565–66. Although the president of Chuckleberry has

stated that Chuckleberry believed it had every right to republish the photographs in the May, 1980 issue of *Adelina* and did so in good faith, I find this an insufficient basis upon which to grant a motion for summary judgment. As the Supreme Court has noted in an analogous situation:

[t]he defendant in a defamation action brought by a public official cannot ... automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith.

*St. Amant v. Thompson,* 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968). In this case, it appears that there is a factual question as to whether Chuckleberry should have had substantial reason to question the accuracy of the article, especially because the caption under the picture misidentified the author of the novel and screenplay "The World is Full of Married Men." In addition, numerous factual questions exist concerning Chuckleberry's use of the cover of the May, 1980 issue of *Adelina* in advertisements in subsequent issues since it appears that this action was pending at the time the latter issues were published.

On the other hand, plaintiff has not disputed the affidavit of Julius L. Ross, President of PDC, which establishes that PDC neither knew nor had notice of the defamation contained in the May, 1980 issue of *Adelina.* Furthermore, I find that plaintiff has failed to raise a question of fact as to whether PDC, under the circumstances, should have been on notice that the publisher was unreliable. *See* Affid. of Julius L. Ross, sworn to March 28, 1980 at # 6. Consequently, summary judgment is granted for PDC on this issue.

With respect to the issues of *Adelina* that contained the advertisement using the cover of the May 1980 issue, PDC contends that it was no longer the distributor and cannot be held liable for any damages arising from these publications. While this may be the case, the deposition statements of Eugene Ford do not establish with cer-

tainty the date on which Flynt assumed total responsibility for distribution of *Adelina*. Thus, the nature and extent of PDC's role in the distribution of the June, 1980 issue of Adelina as well as the subsequent issues which are claimed to be defamatory are unclear. In addition, I find that questions of fact clearly are presented with respect to whether special circumstances existed requiring PDC to review the content of the issues of *Adelina* published after the May 1980 issue. In light of the foregoing, summary judgment must be denied with respect to plaintiff's claims concerning the June, 1980, and January 1981 issues of *Adelina* and the February/March 1981 issue of *Rooster* magazine.

## RULE 37 MOTIONS

Plaintiff has moved for an order pursuant to Fed.R.Civ.P. 37(d), striking Chuckleberry's answer and counterclaim. PDC similarly has moved for an order pursuant to Rule 37 precluding Chuckleberry from opposing PDC's cross-claim for indemnity and severing plaintiff's claims against PDC from its claims against Chuckleberry for trial pursuant to Fed.R.Civ.P. 42(b) and for other and further related relief. These motions are the result of the continued inability of plaintiff to obtain the deposition of Chuckleberry's president, Seymour Butan. PDC claims that its ability to prepare its defense for trial and its arguments in support of its motion for summary judgment have been substantially impaired as a result of Chuckleberry's failure to submit to deposition by plaintiff.

Plaintiff attempted unsuccessfully to obtain Chuckleberry's deposition from September, 1980 through January, 1981. On January 16, 1981, a pretrial conference was held before this court. Richard Waxman, Esq. of Goldschmidt, Fredericks, Kurzman & Oshatz, appeared on behalf of Chuckleberry. The court directed plaintiff at this conference to serve Mr. Butan with a subpoena and stated that a motion to strike Chuckleberry's answer would be entertained if the subpoena was not obeyed.[2] The subpoena was served setting a deposition date of February 20, 1981. This subsequently was adjourned at Chuckleberry's request to March 5, 1981 and then to March 10, 1981. Attorneys for Chuckleberry and PDC and the court reporter arrived at plaintiff's attorney's office at the scheduled time on March 10, 1981 but Mr. Butan failed to appear and also failed to telephone to explain his absence.

Chuckleberry's affidavit in opposition to plaintiff's motion to strike its answer and counterclaim states that Mr. Butan's nonappearance was based on a "medical emergency".[3] Chuckleberry, however, did not submit a doctor's report or any other proof to document the nature and extent of this emergency.

Under Fed.R.Civ.P. 37, the court, in its discretion, may impose "just" sanctions against a party who "fails to obey an order to provide or permit discovery". Only where a party has acted willfully, in bad faith or with deliberate disregard of a court order should the sanction of judgment by default for failure to comply with a discovery order be employed. This remedy should not be invoked where failure to comply is due to inability to comply. *Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958).

In view of the foregoing, Chuckleberry is ordered to submit an affidavit of Mr. Butan's treating physician setting forth the nature and extent of his purported March 10, 1981 "medical emergency." Failure to submit this affidavit within twenty days of the filing of this opinion will result in the dismissal of Chuckleberry's answer and counterclaim to plaintiff's complaint. In the event that such medical proof is satisfactory to this court, Chuckleberry will

---

**2.** Mr. Waxman claims in his affidavit that he is "not aware of any order compelling the deposition of Mr. Butan." Such an order was made by this court at the pretrial conference on January 16, 1981.

**3.** This "medical emergency" allegedly resulted from a "severe hemorrhoidal condition, making it impossible for him to sit for any extended period of time."

be given one further opportunity to submit to deposition.

Because of Chuckleberry's persistent forestalling of the discovery proceedings and for the failure of Mr. Butan to telephone plaintiff's attorney on March 10, 1981, reasonable costs, including attorneys' fees, are imposed on Chuckleberry. Plaintiff and PDC are to submit affidavits to this court setting forth expenses and fees incurred at the March 10 aborted depositions in accordance with the above.

PDC's motion to preclude Chuckleberry from opposing its cross-claim for indemnity, for severance of plaintiff's claims against it pursuant to Fed.R.Civ.P. 42(b), for a stay of trial against PDC pending a hearing on inquest against Chuckleberry pursuant to Fed.R.Civ.P. 55(b) and for entry of judgment against Chuckleberry pursuant to Fed.R.Civ.P. 54(b) are denied. While the inconvenience to PDC caused by Chuckleberry's failure to submit to deposition by plaintiff is not disputed, it does not appear that PDC has been significantly prejudiced by Chuckleberry's failure to submit to the March 10, 1981 deposition. First, it does not appear that PDC has been hampered in its defense to plaintiff's claims. Second, since PDC's claims against Chuckleberry for indemnity involve issues that are separate and distinct from plaintiff's claims against Chuckleberry, it is unlikely that Chuckleberry's failure to appear for deposition by plaintiff has adversely affected PDC's case against Chuckleberry. Finally, although it appears that Chuckleberry is reluctant to appear for a deposition by the plaintiff, there is no indication that Chuckleberry would fail to respond to a deposition noticed by PDC. Thus, PDC's motion for sanctions is denied.

## CONCLUSION

In accordance with the above, plaintiff's motion to amend her complaint is granted. PDC's and Chuckleberry's motions for summary judgment on plaintiff's right of publicity claim are denied and summary judgment is granted for plaintiff on this claim. PDC's and Chuckleberry's motions for summary judgment on plaintiff's libel claims are denied. PDC's motion for sanctions against Chuckleberry is denied. However, plaintiff's motion for sanctions against Chuckleberry is granted unless Chuckleberry submits satisfactory proof, as directed above, that its failure to appear for the March 10, 1981 deposition noticed by plaintiff was in fact the result of a medical emergency...

SO ORDERED.