**Louise REEVES, Administratrix, Plaintiff,**

v.

**UNITED ARTISTS, et al., Defendants.**

**Civ. A. No. C82–1284.**

United States District Court, N.D. Ohio, E.D.

Oct. 19, 1983.

---

**1232**

Richard Agopian, Cleveland, Ohio, for plaintiff.

Michael Brittain, Terence J. Clark, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

The question before this Court is whether the widow of a boxer is entitled to a portion of the profits from a motion picture containing a reenactment of one of the boxer's fights. Pending before the Court is defendant's Motion to Dismiss. Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Upon consideration, the motion is granted, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## FACTS

Plaintiff Louise Reeves is the widow of J.R. Jimmy Reeves, a professional boxer whose career included 164 fights (150 wins and 14 losses) during the years 1933 through 1946. One of those fights, which took place at the old "Cleveland Arena" on September 24, 1941, after Jimmy Reeves turned pro, is the subject of this lawsuit. A portion of the fight is dramatized by actors Robert DeNiro (as Jake LaMotta) and Floyd Anderson (as J.R. Jimmy Reeves) in the motion picture "Raging Bull", a biographical account of the life of boxer Jake LaMotta. The dramatization at issue totals approximately two minutes at the beginning of the feature-length film. According to Reeves' computation, the fight scene comprises approximately 1½% of the total length of the film. Boxing records show that, in the fight in question, Reeves defeated LaMotta.

Louise and Jimmy Reeves were married from September 27, 1941 until Jimmy Reeves' death on December 21, 1974. Louise Reeves, as the administratrix of Reeves' estate, brings this action against United Artists Corporation, the maker of "Raging Bull", and numerous other producers, writers and actors, including Robert DeNiro and Floyd Anderson, alleging they misappropriated the name, identity, character, ability and performance of Jimmy Reeves, thereby depriving Reeves' estate of a property right and violating Reeves' right of publicity. Jimmy Reeves never contracted with United Artists to receive compensation for its dramatization of his September 24, 1941 fight, nor did he enter into any contract with United Artists regarding his right of privacy.

Attempts to serve the other defendants were unsuccessful; hence, United Artists is the only defendant before the Court. It moves to dismiss, contending that any action based on a right of publicity terminated at Jimmy Reeves' death.

## CONCLUSIONS OF LAW

*A. Right of Publicity*

The right of publicity, upon which this action is grounded, is a dynamic body of

law still evolving from its early roots as a progeny of the right of privacy. The right of publicity was first recognized in *Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2d Cir.1953), *cert. denied* 346 U.S. 816, 74 S.Ct. 26, 98 L.Ed. 343 (1953). Most recently, it has developed to protect a performer from the unauthorized commercial exploitation of his identity, thereby preserving the value of the performer's identity to promoters of goods and services. *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 835 (6th Cir. 1983).

█ The common law recognized a right of action for the appropriation or unauthorized commercial use of the name or likeness of another. *Memphis Development Foundation v. Factors Etc.*, 616 F.2d 956, 957 (6th Cir.1980), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). In Ohio, a performer has the right of exclusive control over the publicity given to his performances. *Zacchini v. Scripps-Howard Broadcasting Co.*, 54 Ohio St.2d 286, 376 N.E.2d 582 (1978); *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St.2d 224, 351 N.E.2d 454 (1976), *rev'd on other grounds*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977).[1] The United States Supreme Court placed its imprimatur on Ohio's recognition of this right of publicity when it held that a television station may be liable for violating a performer's right of publicity and is not immune from damages under the First and Fourteenth Amendments. *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 575, 97 S.Ct. 2849, 2857, 53 L.Ed.2d 965 (1977). It is obvious that the facts of this case present a claim under the right of publicity theory. What is less clear is whether a deceased boxer's right of publicity can be asserted by his estate.

The majority of courts which have considered the question hold that the right of publicity is descendible. *See, Commerce Union Bank v. Coors of the Cumberland, Inc.*, 7 Media L.Rep. (BNA) 2204, (Tenn. Chan.App.1981). (Bluegrass musician Lester Flatt's right of publicity survives his death); *The Martin Luther King Jr., Center for Social Change Inc., v. American Heritage Products*, 694 F.2d 674 (11th Cir.1983)[2] (right to publicity survives the death of its owner and is inheritable and devisable); *Estate of Presley v. Russen*, 513 F.Supp. 1339 (D.N.J.1981) (Elvis Presley's right of publicity survived his death and became part of Presley's Estate); *Factors Etc., Inc. v. Creative Card Co.*, 444 F.Supp. 279 (S.D.N.Y. 1977) *aff'd*, 579 F.2d 215 (2d Cir.1978), *cert. denied* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979) (right of publicity should survive celebrity's death); *Factors Etc., Inc. v. Pro Arts, Inc.*, 444 F.Supp. 288 (S.D.N.Y. 1977), *aff'd* 579 F.2d 215 (2d Cir.1978), *cert. denied* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). (Elvis Presley's assigned right of publicity descends at death like any other intangible property); *Hicks v. Casablanca Records*, 464 F.Supp. 426 (S.D.N.Y.1978) (Agatha Christie's right of publicity survives her death only if "exploited" by her during her lifetime; but right is subject to limitations of first amendment protections accorded to novels and movies); *Price v. Hal Roach Studios, Inc.*, 400 F.Supp. 836 (S.D.N.Y.1975) (Laurel and Hardy's right of publicity is assignable and

---

1. Zacchini sued a television station for videotaping and broadcasting his "human cannonball" act after he had asked that it not do so. The Ohio Supreme Court recognized Zacchini's exclusive right of publicity but held that the First Amendment immunized the television station from damages. The United States Supreme Court allowed the right of publicity decision to stand, but held the station enjoyed no First Amendment immunity under the Constitution. On remand, the Ohio Supreme Court did not find any immunity in the Ohio Constitution and ordered the questions of liability and damages to trial.

2. The Eleventh Circuit Court of Appeals certified the question of the descendibility of the right of publicity to the Georgia Supreme Court after the question was appealed from a decision of the District Court for the Northern District of Georgia holding the right was not descendible under Georgia law. The Georgia Supreme Court held the right is descendible. The Eleventh Circuit reversed the District Court based on the state court's resolution of the substantive state law question.

there is no logical reason to terminate this right upon their deaths).

However, the law in this Circuit is not in accord with the majority of other courts which have considered the issue. In *Memphis Development, supra,* the Sixth Circuit held that the right of publicity is not descendible under Tennessee law. In *Factors Etc., Inc. v. Pro Arts, Inc.,* 652 F.2d 278 (2d Cir.1981), the Second Circuit ruled similarly because it decided it was constrained to follow the Sixth Circuit's interpretation of Tennessee law, noting however that "The writer would probably uphold a descendible right of publicity, were he serving on the Tennessee Supreme Court, and perhaps if he served on the Sixth Circuit when Memphis Development was decided." *Id.* at 282. Likewise, in *Groucho Marx Productions v. Day and Night Co., Inc.,* 689 F.2d 317 (2d Cir.1982), the Second Circuit reversed the lower court's holding that the right of publicity was descendible when the Court of Appeals determined that California law, which does not recognize a descendible right of publicity, applied, rather than New York law, which does recognize a descendible right of publicity.

United Artists urges this Court to follow the holdings in *Memphis Development Foundation v. Factors Etc., Inc., supra;* and *Factors Etc., Inc. v. Pro Arts, Inc.,* 652 F.2d 278 (2d Cir.1981). Reeves contends that *Memphis Development, supra* is not controlling because it represents the Sixth Circuit's assessment of Tennessee's position on the issue despite the fact that, at the time of the Sixth Circuit's decision, no Tennessee court had addressed the issue, and the Court of Appeals had "no way to assess their predisposition." *Id.* at 958.[3] Reeves urges this Court to consider and follow the courts holding the right of publicity is descendible.

### B.   Descendibility of the Right

The differing views on the descendibility of the right of publicity can be attributed to different court's views of the nature of the right. The source of their dichotomy can be traced to an influential article by Dean Prosser, in which four distinct types of right to privacy are identified. One of these types, "appropriation of one's name or likeness for the defendant's advantage", has become known as the right of publicity. *See, Carson v. Here's Johnny, supra* at 834. Although the right of publicity and the right to privacy are recognized as protecting "fundamentally different interests" which "must be analyzed separately", *Id.,* the right of publicity's root in the right of privacy has caused confusion.

■ The right of privacy is a personal right which terminates at death. *Young v. That Was The Week That Was,* 423 F.2d 265 (6th Cir.1970). This is the general rule recognized by federal courts in this Circuit when applying Ohio law to right of privacy claims. *Id.* Courts viewing the right of publicity as a derivative of the right of privacy can reasonably determine that the right of publicity, like its progenitor, is not descendible.

Courts holding the right of publicity is descendible have generally determined that the right of publicity has evolved beyond its origins in privacy into a "species of 'property'." *Factors Etc., Inc. v. Creative Card Co., supra* at 824. *See also, Factors Etc., Inc. v. Pro Arts, Inc., supra, aff'd* 579 F.2d 215 (2d Cir.1978). This Court must determine which view of the right of publicity to apply in this case. In *Memphis Development, supra,* the Sixth Circuit applied Tennessee law. While *Memphis Development* provides useful guidance, it must be distinguished from this case because of the difference in state law to be applied; therefore, *Memphis* is not clearly dispositive. In the case at bar, Ohio substantive law must be applied. *See, Carson v. Here's Johnny*

---

**3.** Since the Sixth Circuit's decision in *Memphis Development,* two Tennessee courts have issued divergent opinions on the issue. *See, Factors v. Pro Arts,* 701 F.2d 11 (2d Cir.1983), citing *Lancaster v. Factors, Etc., Inc.,* 9 Media L.Rep. (BNA) 1109 (Tenn.Chan.App.1982) (right of publicity is not descendible in Tennessee); and *Commerce Union Bank v. Coors of the Cumberland, Inc., supra.* (Tennessee law does recognize a descendible right of publicity).

*Portable Toilets, Inc., supra* at 834 n. 1; *Memphis Development, supra* at 958.

The Ohio Supreme Court explicitly considered the nature of the right of publicity in *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St.2d 224, 351 N.E.2d 454 (1976) ("*Zacchini I*"), *rev'd on other grounds*, 433 U.S. 562, 568, 97 S.Ct. 2849, 2853, 53 L.Ed.2d 965 (1977) ("*Zacchini II*"). In its opinion, (which this Court may consult to explain the syllabus containing the rule of law used to decide the case)[4] the Ohio Supreme Court specifically rejected the notion that the right of publicity was a property right. Rather, it declared the right of publicity was more closely aligned with the right of privacy. Noting that the Ohio Court of Appeals found that the videotaping of the "human cannonball" act was not adequately embraced by an action for "... invasion of privacy, including appropriation ..." and instead held that the videotaping was "... an invasion of a property right ...", the Ohio Supreme Court stated:

> ... It is the opinion of this court that plaintiff's claim is one for invasion of the right of privacy by appropriation, and should be considered as such. The Court of Appeals raised other issues in this case *sua sponte,* and has, in our view, improperly and unwarrantedly disregarded the principles underlying conversion and common law copyright....

*Zacchini I* at 226.

■ In light of the Ohio Supreme Court's clear language linking the right of publicity more closely to the right of privacy than to a property right, this Court must conclude that under Ohio law, the right of publicity, like the right of privacy, is not descendible. Therefore, under *Memphis Development Foundation v. Factors, Etc., Inc. supra,* and *Zacchini, supra,* this Court is constrained to hold that Jimmy Reeves' right of publicity terminated at his death and Louise Reeves' claim as the administratrix of his estate must be dismissed.

IT IS SO ORDERED.

---

4. *Zacchini II, supra,* at 565 n. 2 and 566, 97 S.Ct. at 2852 n. 2 and 2852 (citing *Beck v. Ohio,* 379 U.S. 89, 93 n. 2, 85 S.Ct. 223, 226 n. 2, 13 L.Ed.2d 142 (1964); and *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 441, 443, 72 S.Ct. 413, 416, 417, 96 L.Ed. 485 (1952).